[Cite as *State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199.]

THE STATE EX REL. ASSOCIATED BUILDERS & CONTRACTORS OF CENTRAL

OHIO ET AL., APPELLANTS, *v.* FRANKLIN COUNTY BOARD OF

COMMISSIONERS ET AL., APPELLEES.

**[Cite as *State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199.]**

*Labor — Prevailing wage — R.C. Chapter 4115 — Policy of board of county commissioners is not equivalent to municipal ordinance or similar provision having force of law — Preemption analysis does not apply — Board abused its discretion in applying bid-evaluation criterion to bidder for public works contract.*

(No. 2008-1478 — Submitted June 2, 2009 — Decided March 25, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 08AP-301,

2008-Ohio-2870.

_____

**SYLLABUS OF THE COURT**

1. A policy of a board of county commissioners for evaluating bids on public contracts is not the equivalent of a municipal ordinance or similar provision having the force of law. Thus, the policy is not a local law within the meaning of Section 3, Article XVIII of the Ohio Constitution, and a preemption analysis does not apply.

2. When a public authority adopts a policy establishing criteria for evaluating the eligibility of bidders on public works projects, the public authority must apply its evaluation criteria in a manner consistent with the exercise of sound discretion.

_____

**CUPP, J.**

{¶ 1} This appeal concerns the process used by the Franklin County Board of Commissioners to determine that appellant The Painting Company was not the best bidder for a public works contract despite being the lowest bidder. We hold that preemption under R.C. Chapter 4115, the framework providing rights and remedies for private contractors and subcontractors engaged in the construction of public improvements in this state, is not applicable to the policy the board established for evaluating bids on public contracts. Therefore, no preemption analysis is required.

{¶ 2} We also hold that a public authority, although it may create a policy establishing criteria by which it will evaluate bids for public works contracts to determine the lowest and best bidder, is obligated to apply its bid evaluation criteria by exercising its sound discretion. In this case, we find that the public authority failed to exercise sound discretion with respect to the manner in which it applied its bid evaluation criteria to evaluate a bid submitted for a public works contract. Therefore, we reverse the court of appeals' judgment and remand for further proceedings.

## I. Factual and Procedural Background

{¶ 3} In October 2007, the Franklin County Board of Commissioners solicited bids for painting work in connection with the construction of the new county-owned Huntington Park baseball stadium in Franklin County, Ohio. The board received two bids for painting work in the new facility. The lowest and best bid would receive the contract for the Huntington Park project.

{¶ 4} In 2002, the board had adopted by resolution a set of criteria for evaluating bids for a public works contract. According to the resolution, the purpose of these criteria was to "ensure that the County's contractors are compliant with the law[,] financially stable and capable of executing construction

2

contracts in a competent and professional manner."[1]  These criteria are referred to as the Qualitative Contracting Standards by the board.  The board reaffirmed its commitment to these criteria in 2006 when it announced that the criteria would be incorporated into the invitation to bid for the Huntington Park project.

**{¶ 5}**  The lowest bidder for the contract was The Painting Company. The Painting Company is a nonunion shop.  The one other bidder was a union shop contractor whose bid was $46,000 more than The Painting Company's bid. After reviewing the submitted bids, the board formally rejected The Painting Company's bid for the Huntington Park project.  Specifically, the board stated that "The Painting Company does not satisfy Section 8.2.4.15 of the [invitation to bid] documents."  The board went on to state that "[t]he attached information demonstrates that The Painting Company has been found by the State of Ohio to have violated the State's prevailing wage laws more than three times in a two-year period within the last ten years; therefore, The Painting Company is not eligible for award of this contract."

**{¶ 6}**  The board's supporting materials included copies of 14 complaints filed with the Ohio Department of Commerce alleging prevailing-wage violations against The Painting Company during the specified time period of Section 8.2.4.15.  All of the complaints had been investigated by the department, and several investigations concluded that any prevailing-wage violation either was not

---

1.  {¶ a} These criteria included such considerations as:
   { ¶ b} "3. Bidder certifies that Bidder will employ supervisory personnel on this project that have three (3) or more years in the specific trade and/or maintain the appropriate state license, if any.
   { ¶ c} "* * *
   { ¶ d} "6. Bidder certifies that Bidder has implemented an OSHA compliant Safety Program and will provide evidence of such upon request.
   { ¶ e} "* * *
   { ¶ f} "10. Bidder certifies that Bidder's construction license has not been revoked in any state.
   { ¶ g} "* * *
   { ¶ h} "15. Bidder certifies that Bidder does not have an Experience Modification Rating of greater than 3.0 (a penalty rated employer) with respect to the Bureau of Workers' Compensation risk assessment rating."

intentional or resulted in no liability. Another group of investigations were resolved through a settlement agreement between The Painting Company and the director of the department. In that agreement, The Painting Company was permitted to expressly disclaim, without any qualification by the department, any liability or wrongdoing in connection with the prevailing-wage laws.

{¶ 7} Subsequent to the board's action, The Painting Company requested and received a formal bid-protest meeting, at which the board affirmed its rejection of The Painting Company's bid.

{¶ 8} Thereafter, The Painting Company appealed from the board's decision. Although questioning the board's wisdom of disqualifying contractors who may have superficial and unintentional violations of the prevailing-wage laws, both the trial and appellate courts determined that the board had the authority to set relevant criteria to evaluate bids on county public works projects. Both courts also held that the board did not abuse its discretion in rejecting The Painting Company's bid because the company failed to meet the county's criterion of compliance with the state's prevailing-wage laws.

{¶ 9} Subsequently, The Painting Company, joined by appellant Associated Builders & Contractors of Central Ohio trade association (collectively, appellants), appealed to this court.[2] We accepted review under our discretionary jurisdiction. 120 Ohio St.3d 1415, 2008-Ohio-6166, 897 N.E.2d 651.

## II. Statutory Provisions

{¶ 10} Ohio's prevailing-wage laws are contained in R.C. Chapter 4115. In general, these provisions require contractors and subcontractors for public works projects to pay laborers and mechanics the "prevailing wage" in the locality where the project is to be performed. See generally R.C. 4115.03 through

---

2. Associated Builders & Contractors of Central Ohio is a not-for-profit trade association made up of contractors, subcontractors, material suppliers, and related entities that provide construction services within Ohio.

4115.21; *J.A. Croson Co. v. J.A. Guy, Inc.* (1998), 81 Ohio St.3d 346, 349*,* 691 N.E.2d 655. "'[T]he primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.'" Id. at 349*,* 691 N.E.2d 655, citing *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 431 N.E.2d 311.

{¶ 11} The prevailing rate of wages for a particular class of work is determined by the director of the Ohio Department of Commerce. R.C. 4115.04(A)(1). The director is also charged with enforcing the prevailing-wage laws. R.C. 4115.10(E). When a complaint is filed with the director alleging that a contractor or subcontractor has violated prevailing-wage laws, an investigation ensues. R.C. 4115.13(A). At the conclusion of the investigation, the director makes a recommendation as to whether a violation occurred and whether that violation was intentional. R.C. 4115.13(B).

{¶ 12} If the director recommends that a violation was intentional, the director gives written notice of that recommendation to the violator and advises that person or entity that an appeal of the recommendation may be filed. R.C. 4115.13(B). The notice and hearing procedures are set forth in R.C. 4115.13. A recommendation that a contractor or subcontractor intentionally violated the prevailing-wage laws becomes a formal finding of fact only if the contractor or subcontractor does not appeal the recommendation or, if after a hearing before an examiner, the director adopts the examiner's findings of fact and recommendation that the violation was intentional. R.C. 4115.13(B). A contractor or subcontractor intentionally violates prevailing-wage laws when it intentionally fails to submit payroll records to the contracting public authority, knowingly submits false payroll records, intentionally misclassifies employees for the purpose of reducing wages, intentionally fails to comply with the apprentice-to-

skilled-worker ratio, or intentionally allows a barred contractor to perform work on a public works project. R.C. 4115.13(H)(1) through (6).

{¶ 13} In certain situations, a failure to comply with prevailing-wage laws can be excused. If the director makes a finding that an underpayment was the result of a contractor or subcontractor's misinterpretation of the statutes or an erroneous preparation of the payroll documents, no further enforcement proceedings take place provided restitution of the underpaid amount is made. R.C. 4115.13(C).

{¶ 14} However, if no such situation is presented, once the director's initial recommendation is reduced to a finding, the director has the power to collect underpayments from the contractor or subcontractor in the form of restitution, along with a penalty. R.C. 4115.10(A) and (B). The director files with the secretary of state the name of the contractor or subcontractor who has been prosecuted for and convicted of intentionally violating the prevailing-wage laws. R.C 4115.133(A). The name shall not be filed until the applicable appeal period has expired or the court makes an entry of final judgment in favor of the director in any appeal. Id.

{¶ 15} The consequence of the filing with the secretary of state is that the contractor or subcontractor is barred from contracting with any public authority for any public works project for a one-year period. R.C. 4115.13(D) and 4115.133(B). After the first violation, if a contractor or subcontractor again intentionally violates the prevailing-wage laws within a five-year period, the debarment period is extended to three years. R.C. 4115.133(B). A public authority may not award a contract for any public works project to any contractor or subcontractor whose name appears on the list. R.C. 4115.133(C). Criminal penalties also apply if the director determines that there was a violation of certain provisions of the prevailing-wage laws. R.C. 4115.99(B).

### III. Preemption Analysis

{¶ 16} In support of the proposition of law accepted by this court, appellants assert that the manner in which the board interpreted and applied its bid-evaluation criterion contained in Section 8.2.4.15 imposes a "de facto" debarment and does so in a more expansive manner than the prevailing-wage laws. Appellants claim that the board's evaluation criterion is invalid because it conflicts with, and is therefore preempted by, the state's prevailing-wage statutes.

{¶ 17} We find that preemption does not apply to this matter. The starting point for a preemption analysis is the language of the Home Rule Amendment, Section 3, Article XVIII of the Ohio Constitution: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The test for whether a conflict exists between an ordinance and a statute "is whether the ordinance permits or licenses that which the statute prohibits and vice versa." *In re Decertification of Eastlake* (1981), 66 Ohio St.2d 363, 368, 20 O.O.3d 327, 422 N.E.2d 598.

{¶ 18} This concept of home rule, however, applies expressly only to municipalities, not to county governments. A county government possesses only those powers that are authorized by statute, and it generally otherwise lacks the authority to exercise powers of local self-government, except for those limited instances in which county home rule has been adopted pursuant to R.C. Chapter 302. See Section 1, Article X, Ohio Constitution; *Schaffer v. Franklin Cty. Veterans Memorial Bd. of Trustees* (1960), 171 Ohio St. 228, 230-231, 12 O.O.2d 343, 168 N.E.2d 547; *Blacker v. Wiethe* (1968), 16 Ohio St.2d 65, 45 O.O.2d 367, 242 N.E.2d 655.

{¶ 19} Moreover, the evaluation criterion appellants claim conflicts with the prevailing-wage statutes is not a municipal ordinance or similar municipal provision having the force of law. Rather, Section 8.2.4.15 is a part of a policy adopted by a county board for its use in evaluating the eligibility of a bid

submitted for a public works contract. As a result, there is no local law conflicting with the state prevailing-wage statutes within the meaning of Section 3, Article XVIII, and no preemption analysis is required or applicable.

{¶ 20} Because there is no preemption question presented, we decline the invitation to engage in such an analysis.

## IV. Exercise-of-Discretion Analysis

{¶ 21} Although we reject appellants' characterization of this issue as a matter of preemption, appellants' position is supported by an alternate rationale. On the record, we find that the board failed to exercise sound discretion with respect to the manner in which it applied its evaluation criteria to the bid submitted by The Painting Company. Not only did the board misapply one of its evaluation criteria to determine that The Painting Company was not the lowest and best bidder for the Huntington Park contract, but it relied on its misapplication of that criterion to exclude consideration of all other evaluation criteria contained in its policy, thereby improperly disqualifying The Painting Company's bid from consideration for the Huntington Park contract.

{¶ 22} In determining the best bidder for a local public works contract, a public authority has considerable latitude in making its decision. *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21-22, 552 N.E.2d 202. As a part of this broad discretion, a public authority may consider all relevant factors in its evaluation of which submitted bid is best. See R.C. 9.312(A); *Rein Constr. Co. v. Trumbull Cty. Bd. of Commrs.* (2000), 138 Ohio App.3d 622, 629, 741 N.E.2d 979; *Prime Contrs., Inc. v. Girard* (1995), 101 Ohio App.3d 249, 258, 655 N.E.2d 411. This discretion is not vested in the courts, and the courts cannot interfere unless it clearly appears that the public authority is abusing the discretion so vested in it. *Cedar Bay,* 50 Ohio St.3d at 21, 552 N.E.2d 202.

{¶ 23} To aid in the evaluation process, a public authority may establish evaluation criteria that supplement the statutory criteria for reviewing a bid. A

bidder's history of compliance with prevailing-wage laws could be among the criteria for a public authority to consider. In fact, to the extent a public authority is required to comply with the prevailing-wage laws, it may be error for a public authority to fail to consider a bidder's record in this regard. See, e.g., R.C. 4115.133(C) (no public authority shall award a public works contract to a contractor whose name appears on the secretary of state's list of contractors who have violated certain prevailing-wage laws).

{¶ 24} Nevertheless, once a public authority has adopted supplemental evaluation criteria, it is then obligated to follow and apply those criteria within its permitted zone of discretion. The presumption in contract-bidding litigation is that the public authority performed its duties in a regular and lawful manner. *Cedar Bay,* 50 Ohio St.3d at 21, 552 N.E.2d 202. The wide discretion vested in the public authority is not abused when the public authority exercises will, judgment, or reason in its award of a contract to a bidder, but this discretion is neither "unlimited nor unbridled." *Dayton ex rel. Scandrick v. McGee* (1981)*,* 67 Ohio St.2d 356, 360, 21 O.O.3d 225, 423 N.E.2d 1095. Accordingly, a disappointed bidder must present clear and convincing evidence to demonstrate that the public authority abused its discretion in awarding a contract. *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O. 465, 113 N.E.2d 14; *Cleveland Constr., Inc. v. Ohio Dept. of Adm. Servs., Gen. Servs. Adm.* (1997), 121 Ohio App.3d 372, 384, 700 N.E.2d 54.

{¶ 25} In this case, The Painting Company has demonstrated with clear and convincing evidence that the board abused its discretion by misapplying one of its evaluation criteria, Section 8.2.4.15, to determine that the bid submitted by The Painting Company was not the lowest and best bid for the Huntington Park contract. Section 8.2.4.15 requires the lowest responsive bidder to provide all information that "the Project Representative deems appropriate to the

consideration of factors showing that such Bidder's bid is best, including without limitation the following:

**{¶ 26}** "* * *

**{¶ 27}** "8.2.4.15.  Information that the Bidder has not been debarred from public contracts or found by the state (after all appeals) to have violated prevailing wage laws more than three times in a two-year period in the last ten years."

**{¶ 28}** The question is whether The Painting Company has been "debarred from public contracts or found by the state (after all appeals) to have violated prevailing wage laws" within the specified time period.

**{¶ 29}** Our analysis begins with the observation that the term "violated" as contained in Section 8.2.4.15 is imprecise.  Neither the board's contracting-standards criteria nor the Project Manual provides a definition of "violation."  Nor is there a definition of "violation" in the prevailing-wage statutes of R.C. Chapter 4115, or any indication of whether "violation" refers only to intentional violations or to any violation no matter how unintended or inconsequential.  Even the chief of the Wage and Hour Bureau opined that the "quest for a definition of 'violation' cannot be secured through a review of [R.C. Chapter 4115] in and of itself.  Some would argue that the mere fact that back wages are owed constitutes a violation.  However, under Section 4115.13(C), that is not necessarily accurate."  Although there is no formal *definition* of the term "violation" in either the county policy or state statutes, we conclude that the plain sense of the term "violat[ion]," as used in Section 8.2.4.15, refers to the situation in which the director makes a formal finding that a contractor or subcontractor intentionally violated the prevailing-wage laws, and all appeals are exhausted.

**{¶ 30}** The process for ascertaining whether a contractor or subcontractor has violated prevailing-wage laws supports this meaning of the term.  For instance, when the director completes an investigation, a recommendation is

issued. R.C. 4115.13(B). This recommendation is the first step in prosecuting potential violations; a recommendation alone does not give rise to penalties or equate to a finding of intentional misconduct. That recommendation may lead, in various ways, to a decision by the director that a violation has occurred, either intentional or unintentional. R.C. 4115.13(B), (C), (D), and (G). The director will then determine whether a sanction is appropriate. R.C. 4115.13(D) and 4115.133. A finding that a wage underpayment has occurred does not automatically equate to a finding of an intentional prevailing-wage violation. For instance, the wage underpayment could be excused upon restitution under R.C. 4115.13(C).

{¶ 31} Nor do settlement agreements that resolve prevailing-wage disputes between a contractor and the director constitute evidence of a violation. The settlement agreement represents a negotiated conclusion to a dispute. Because the dispute was resolved through negotiation and consequently removed from the statutory decision-making process, no administrative or judicial authority ever made a final determination that any prevailing-wage laws were violated, as contemplated in Section 8.2.4.15 by the phrase "found by the state (after all appeals)." Cf. *State ex rel. Dillard Dept. Stores v. Ryan*, 122 Ohio St.3d 241, 2009-Ohio-2683, 910 N.E.2d 438, syllabus (a voluntary dismissal with prejudice is not a judicial determination that workers' compensation payments were made to an employee in error, when no court has entered a judgment to that effect).

{¶ 32} In this case, the board applied Section 8.2.4.15 to mean that any noncompliance with prevailing-wage laws by the bidder during the applicable time period was the equivalent of a prevailing-wage violation. The board never considered that under R.C. 4115.13(C), wage underpayments resulting from mere mistake are excused from prosecution as a violation.

{¶ 33} The board's rejection of The Painting Company's bid is not consistent with the term "violated" as used in Section 8.2.4.15. Section 8.2.4.15,

for instance, does not require disclosure of information pertaining to instances of noncompliance with the prevailing-wage laws. Rather, it requires disclosure of information when the bidder "violated" those laws. Moreover, the disclosure requirement is further limited to violations found by the state "after all appeals." There is no evidence that The Painting Company has violated the prevailing-wage laws within the meaning of Section 8.2.4.15 or the prevailing-wage statutes because *after all appeals*, the director never found under R.C. 4115.13 that The Painting Company violated the prevailing-wage laws. The Painting Company is not included on the secretary of state's listing of contractors and subcontractors who are debarred from public works projects, as set forth in R.C. 4115.13 and 4115.133.

**{¶ 34}** Moreover, in the settlement agreement, The Painting Company was permitted to expressly disclaim, without any contradiction by the department, any liability or wrongdoing in connection with wage underpayments.[3] This situation is analogous to that in *Dillard*, because without debarment or a finding by the state (after all appeals) of a prevailing-wage violation, the settlement agreement cannot evidence any such violations within the meaning of the

_____

3. { ¶ a} The settlement agreement provides:

{ ¶ b} "WHEREAS, The Painting Company disputes any liability for the underpayment of prevailing wages * * *; and

{ ¶ c} "***

{ ¶ d} "WHEREAS, [the Department of] Commerce and The Painting Company have successfully negotiated a settlement of the dispute without any acknowledgement of liability by The Painting Company;

{ ¶ e} "NOW THEREFORE, * * * the Department of Commerce, on behalf of the State of Ohio, hereby releases and forever discharges The Painting Company * * * from any and all * * * penalties * * * arising out of or in any way concerning, directly or indirectly, claims against The Painting Company for the alleged underpayment of prevailing wages by The Painting Company [on specified projects].

{ ¶ f} "***

{ ¶ g} "It is understood and agreed by [the Department of] Commerce that this release constitutes a compromise settlement of the disputed claim or claims, and that payment by The Painting Company of the above-stated settlement is not to be construed as and does not constitute an admission of liability or wrongdoing on the part of The Painting Company."

prevailing-wage statutes for purposes of Section 8.2.4.15. See id., 122 Ohio St.3d 241, 2009-Ohio-2683, 910 N.E.2d 438.

{¶ 35} Based on the foregoing, the board misapplied Section 8.2.4.15 of the evaluation criteria to the bid submitted by The Painting Company.

{¶ 36} The Painting Company has also demonstrated with clear and convincing evidence that the board failed to exercise sound discretion because in erroneously disqualifying The Painting Company's bid, it relied on a mistaken application of a single criterion without considering any of the remaining criteria.

{¶ 37} The Painting Company was the lowest bidder on the project by a significant amount. The Painting Company also has a record of successful performance in projects similar to the Huntington Park project. And the Huntington Park construction manager and the board's own representative recommended that The Painting Company receive the contract.

{¶ 38} Nevertheless, these recommendations were apparently dismissed by the board in determining that The Painting Company was ineligible to bid on the Huntington Park project. There is no indication that the board relied on any of the other evaluation criteria to find that The Painting Company was not the best bidder for the Huntington Park project. The trial court also found it notable that the board failed to provide any evidence justifying its decision to reject the recommendations of its own construction manager and representative.

{¶ 39} From all appearances, the board relied on its misapplication of Section 8.2.4.15 as a sole gate-keeping criterion rather than considering its evaluation criteria as a whole when it disqualified the bid submitted by The Painting Company for the Huntington Park project. This departure constituted an abuse of discretion.

### V. Conclusion

{¶ 40} Upon review of the matter at issue herein, we hold that a policy of a board of county commissioners for evaluating bids on public contracts is not the

equivalent of a municipal ordinance or other municipal provision having the force of law. Thus, the policy is not a local law within the meaning of Section 3, Article XVIII of the Ohio Constitution, and a preemption analysis does not apply.

{¶ 41} Moreover, we hold that when a public authority adopts a policy establishing criteria for evaluating the eligibility of bidders on public works projects, the public authority must apply its evaluation criteria in a manner consistent with the exercise of sound discretion.

{¶ 42} Based on the foregoing, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

PFEIFER and LANZINGER, JJ., dissent.

————————————

**PFEIFER, J., dissenting.**

### I. The Merits

{¶ 43} The majority opinion correctly explains that public authorities have broad discretion in evaluating submitted bids and that we "cannot interfere unless it clearly appears that the public authority is abusing [its] discretion." Maj. op. at ¶ 22, citing *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202. But when the majority opinion discusses how the Franklin County Board of Commissioners wielded its discretion, it does not address the widely known abuse-of-discretion standard, which states that "[t]he term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*

(1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144, citing *Steiner v. Custer* (1940), 137 Ohio St. 448, 451, 19 O.O. 148, 31 N.E.2d 855.

{¶ 44} In this case, the majority opinion is reversing the considered judgments of the Franklin County Board of Commissioners, the trial judge, and the judges of the Tenth District Court of Appeals. In doing so, it invents a definition of "violation" in the prevailing-wage context without recourse to case law, statutes, administrative codes, or even a dictionary. And it substitutes its definition of "violation" for the definition used by the Franklin County Board of Commissioners without explaining how the commissioners abused their discretion. Even if I accept the majority opinion's definition of "violation," and I concede that it is as good a definition as any other, I cannot conclude that in adopting a different definition, the commissioners acted unreasonably, arbitrarily, or unconscionably.

{¶ 45} Based on the record and briefs, I conclude that the Franklin County Board of Commissioners adopted a definition of "violation" that was designed to allow them to reject bids from contractors with a history of prevailing-wage-related problems. There is nothing unreasonable, arbitrary, or unconscionable about a public authority promoting a policy that encourages contractors to comply with the spirit as well as the letter of the prevailing-wage law.

## II. Jurisdiction

{¶ 46} The appellants' memorandum in support of jurisdiction contained five propositions of law, including the following:

{¶ 47} "Proposition of Law No. 3: Appellees' *de facto* debarment rule is preempted by R.C. Chapter 4115, a comprehensive scheme balancing the competing public interests in prevailing wage compliance and competition for public contracts.

{¶ 48} "Proposition of Law No. 4: The settlement agreements and court proceedings cannot legally be considered as establishing a violation of law,

because such [a] finding would be contrary to both the language of the agreements and the public policy favoring resolution of disputes through mediation and settlement.

{¶ 49} "Proposition of Law No. 5: Because the state has not 'found' that [The Painting Company] violated the prevailing wage law within the last ten years, Appellees abused their discretion because either the Standards are void for vagueness or the Commissioners' interpretation constituted an unannounced bid criterion."

{¶ 50} This court accepted jurisdiction over Proposition of Law III only. *State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.,* 120 Ohio St.3d 1415, 2008-Ohio-6166, 897 N.E.2d 651. I dissented. Id.

{¶ 51} As I have explained in the past, "I disagree with this court's practice of picking and choosing, within a case, the issues that we are willing to review. If a case is worthy of review, in the interests of providing justice to the parties and because, until we see the entire record, it is exceedingly difficult to ascertain the interplay of various issues, all appealed issues should be before us. Whether we address each issue at that point is, of course, within our considered discretion." *Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶ 60 (Pfeifer, J., dissenting).

{¶ 52} Apparently a majority of this court now agrees with my dissent in *Meyer* because, even though this court accepted jurisdiction over Proposition of Law III only, the majority opinion also addresses Propositions of Law IV and V. I do not disagree with that approach; in fact, I applaud it. But wouldn't it be better for parties and their attorneys if this court accepted jurisdiction without limitation? The current practice is confusing. Attorneys don't know whether they should argue issues that aren't before us; based on this case, they should.

Attorneys also don't know whether they can safely ignore issues that we have told them are not before us; based on this case, they shouldn't.

### III. Conclusion

{¶ 53} I conclude that the Franklin County Board of Commissioners did not abuse its discretion. I would affirm the decision of the court of appeals. I dissent.

LANZINGER, J., concurs in the foregoing opinion.

_____

The Copley Law Firm, L.L.C., Michael F. Copley, Mark E. Landers, Douglas M. Beard, and Kenley S. Maddux; and The Mason Law Firm Co., L.P.A., Ronald L. Mason, and Aaron T. Tulencik, for appellants.

Ron O'Brien, Franklin County Prosecuting Attorney, Nick A. Soulas Jr., First Assistant Prosecuting Attorney, and Anthony E. Palmer, Assistant Prosecuting Attorney, for appellee.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., N. Victor Goodman, and Mark D. Tucker, urging affirmance for amici curiae Ohio State Building & Construction Trades Council and Columbus/Central Ohio Building & Construction Trades Council.

Bricker & Eckler, L.L.P., and Luther L. Liggett Jr., urging affirmance for amici curiae National Electrical Contractors' Association, Ohio Conference, and Mechanical Contractors Association of Northwestern Ohio.

_____