PRUNEAU et al., Appellants,

v.

DEPARTMENT OF COMMERCE, BUREAU OF WAGE AND HOUR, Appellee.

[Cite as *Pruneau v. Ohio Dept. of Commerce, Bur. of Wage & Hour*, 191 Ohio App.3d 588, 2010-Ohio-6043.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–383.

Decided Dec. 9, 2010.

590

---

Thompson Hine, L.L.P., Peter D. Welin, and Jason R. Harley, for appellants.

Richard Cordray, Attorney General, and Anne Light Hoke and Stephen M. Darling, for appellee.

BRYANT, Judge.

{¶ 1} Appellants, American Glass Services, L.L.C., and Andrea Pruneau, individually as an officer (collectively, "American Glass"), and Dorsey Construction Company and Pruneau, individually as an officer (collectively, "Dorsey"), appeal from judgments of the Franklin County Court of Common Pleas dismissing appellants' consolidated administrative appeal from an order of appellee, the state of Ohio, Department of Commerce, Bureau of Wage and Hour that concluded that appellants had violated Ohio's Prevailing–Wage Law, R.C. 4115.01 et seq. Appellants assign a single error:

> The court of common pleas erred in affirming the decisions of the Ohio Department of Commerce Bureau of Wage and Hour because those decisions were not supported by reliable, probative and substantial evidence and were not in accordance with law.

Because the common pleas court (1) did not err in determining that reliable, probative, and substantial evidence supports the Commerce Department's final order against American Glass but (2) erred in determining that Dorsey received adequate notice of the charges against it, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} Dorsey and American Glass are separate companies with common ownership; Pruneau is the president of both companies. In 2005, the city of Columbus contracted with Dorsey, as general contractor, to construct a new entrance for Columbus's Central Safety Building located at 120 Marconi Boulevard; American Glass was the glass subcontractor on the project. As a contract for a public-improvement project, the contract was subject to Ohio's Prevailing–Wage Law set forth in R.C. 4115.01 et seq.

{¶ 3} In separate notices of intentional violation issued January 15, 2008, the Commerce Department alleged that Dorsey and American Glass had violated R.C. 4115.13(H)(1) by knowingly submitting false or erroneous reports. Dorsey's notice letter alleged that Dorsey had submitted certified payroll reports from November 2005 through April 2006, to which Pruneau attested, indicating that fringe benefits had been paid although those payments did not occur until approximately May 2007. American Glass's notice letter alleged that American Glass submitted payroll reports from March 2006 through April 2006, to which Pruneau also attested, indicating that fringe benefits had been paid although those payments did not occur until April 19, 2007.

{¶ 4} Both Dorsey and American Glass requested separate administrative hearings pursuant to R.C. 4115.13(B). Different hearing examiners conducted the two hearings, with Dorsey's hearing being held on April 21, 2008, and

American Glass's hearing commencing on April 22, 2008. Although the hearings were separate, they were similar in that the same witnesses testified, with the exception of one additional witness for American Glass. At each hearing, undisputed evidence established that both Dorsey and American Glass had submitted certified payroll records indicating fringe benefits paid but that neither company actually paid the benefits until more than a year after certifying the reports and only after the Commerce Department initiated its investigations into each company. At each hearing, Pruneau testified that she had always intended to pay the fringe benefits.

{¶ 5} On July 1, 2008, the hearing examiner for Dorsey's hearing issued a report and recommendation finding that "although [the Commerce Department] did not prove a clear violation of R.C. 4115.13(H)(1), there was sufficient notice in the detail of the charges to find that [Dorsey's] actions constituted a violation of R.C. 4115.13(H)(4)." With that premise, the hearing examiner found an intentional violation of Ohio's Prevailing Wage Law from Dorsey's failure to pay fringe benefits "within a reasonable time or on a regular basis."

{¶ 6} On July 18, 2008, the hearing examiner for American Glass issued a report and recommendation concluding that when payroll reports are certified pursuant to R.C. 4115.13(H)(1), the "wages and pension contributions shown on the payroll report must not only be accurate, they also must be paid. To find otherwise is to circumvent the meaning of the statute." The hearing examiner thus determined that American Glass had intentionally violated Ohio's Prevailing–Wage Law in its failure to pay fringe benefits "within a certain time period."

{¶ 7} On August 15, 2008, Commerce entered final orders against both Dorsey and American Glass, adopting the reports and recommendations of the hearing examiners that found intentional violations in each case. Pursuant to R.C. 4115.13(D), the department ordered that both Dorsey and American Glass be debarred and "prohibited from contracting directly or indirectly with any public authority for the construction of a public improvement or from performing any work on the same" for a one-year period, applicable from either the expiration of the applicable period for filing an appeal or the date of the final judgment of a court.

{¶ 8} Both Dorsey and American Glass timely appealed to the common pleas court pursuant to R.C. 119.12, and the court consolidated the two cases. In a decision and entry filed March 29, 2010, the court concluded that reliable, probative, and substantial evidence supported both of the department's final orders, determined that the final orders were in accordance with law, and presumably affirmed the orders when it dismissed both appeals. Dorsey and American Glass timely appealed to this court.

## II.  Standard of Review

{¶ 9} Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and the order is in accordance with law.  *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110–111, 17 O.O.3d 65, 407 N.E.2d 1265.  The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' "  *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390.  The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive."  *Conrad* at 111.  The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is "in accordance with law."  *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591.

{¶ 10} An appellate court's review of an administrative decision is more limited than that of a common pleas court.  *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.  The appellate court is to determine only whether the common pleas court abused its discretion.  Id.; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140 (defining an abuse of discretion).  Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court.  *Pons* at 621.  An appellate court, however, has plenary review of purely legal questions.  *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, 784 N.E.2d 753, ¶ 15.

## III.  Statutory Framework—Ohio's Prevailing–Wage Law

{¶ 11} R.C. Chapter 4115 contains Ohio's prevailing-wage laws.  "In general, these provisions require contractors and subcontractors for public works projects to pay laborers and mechanics the 'prevailing wage' in the locality where the project is to be performed."  *State ex rel. Assoc. Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commr*s., 125 Ohio St.3d 112, 2010-Ohio-1199, 926 N.E.2d 600, ¶ 10, citing R.C. 4115.03 through 4115.21; *J.A. Croson Co. v. J.A. Guy, Inc.* (1998), 81 Ohio St.3d 346, 349, 691 N.E.2d 655.  " '[T]he primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.' "  *Assoc. Builders & Contrs. of Cent. Ohio* at ¶ 10,

quoting *J.A. Croson Co.* at 349, citing *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 431 N.E.2d 311.

{¶ 12} The director of commerce determines the prevailing rate of wages for a particular class of work and enforces the prevailing-wage laws. R.C. 4115.04(A)(1) and 4115.10(E); *Assoc. Builders & Contrs. of Cent. Ohio* at ¶ 11. If the director receives a complaint, an investigation ensues, after which the director determines whether a violation occurred and, if so, whether that violation was intentional. R.C. 4115.13(A) and (B). If the director recommends that a violation was intentional, the director provides written notice of that recommendation to the violator. R.C. 4115.13(B). Here, the notice letters provided to Dorsey and American Glass alleged that both companies had intentionally violated R.C. 4115.13(H)(1) by knowingly submitting false or erroneous reports certifying that fringe benefits had been paid when they had not been.

{¶ 13} R.C. 4115.13(H)(1) defines "intentional violation" as "[a]n intentional failure to submit reports as required under division (C) of section 4115.071 of the Revised Code or knowingly submitting false or erroneous reports." See also *Assoc. Builders & Contrs. of Cent. Ohio,* 125 Ohio St.3d 112, 2010-Ohio-1199, 926 N.E.2d 600, at ¶ 12, citing R.C. 4115.13(H)(1) through (6) ("A contractor or subcontractor intentionally violates prevailing-wage laws when it intentionally fails to submit payroll records to the contracting public authority [or] knowingly submits false payroll records"). R.C. 4115.071(C), in turn, requires contractors and subcontractors to deliver "a certified copy of the contractor's or subcontractor's payroll" to the prevailing-wage coordinator. The certified copy "shall exhibit for each employee paid any wages, * * * the employee's hourly rate of pay, the employee's job classification, fringe payments, and deductions from the employee's wages." R.C. 4115.071(C). Further, the certification "shall be executed by the contractor, subcontractor, or duly appointed agent thereof and shall recite that the payroll is correct and complete and that the wage rates shown are not less than those required by the contract." R.C. 4115.071(C).

{¶ 14} Although the notice letters to both Dorsey and American Glass specifically charged the two companies with violations of R.C. 4115.13(H)(1), only the final order against American Glass found a violation of R.C. 4115.13(H)(1); the final order against Dorsey instead found a violation of R.C. 4115.13(H)(4). Pursuant to R.C. 4115.13(H)(4), "intentional violation" includes "[a]n intentional failure to pay the prevailing wage."

## IV. Assignment of Error

{¶ 15} In their sole assignment of error, appellants assert that the common pleas court erred in affirming the administrative orders because not only does reliable, probative, and substantial evidence not support them, but they are not in

accordance with law. Dorsey's issues are distinct from those of American Glass, so we address the two separately.

## A. American Glass

{¶ 16} American Glass argues that the common pleas court erred in two ways in upholding the Department of Commerce's decision finding that American Glass intentionally violated R.C. 4115.13(H)(1). Initially, American Glass asserts that the common pleas court erred in interpreting R.C. 4115.13(H)(1). Secondly, American Glass contends that the department's investigation into the violation was untimely.

### 1. Interpretation of R.C. 4115.13(H)(1)

{¶ 17} In addressing American Glass's appeal, the common pleas court explained that American Glass violated R.C. 4115.13(H)(1) when it failed to contribute to employees' pension plans while continuing to submit certified payroll reports indicating that those payments had been made. The common pleas court's decision turns largely on the interplay between R.C. 4115.13(H)(1) and 4115.071(C) and the importance under those provisions of certifying that fringe benefits were paid. See also R.C. 4115.03(E)(2) ("The rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program" is a portion of the total prevailing wage). American Glass, however, argues that the court misinterpreted R.C. 4115.13(H)(1). It contends that the section does not involve a certification that fringe benefits were paid but only that the payroll reports were correct and complete and the wage rates shown on the reports were not less than those the contract required.

{¶ 18} Despite its contentions on appeal, American Glass undisputedly and expressly certified on its payroll reports "[t]hat the fringe benefits have been paid as indicated above." American Glass attempts to circumvent its certification by suggesting that the language is superfluous, since R.C. 4115.13(H)(1) requires only that the wages shown comply with the contract provisions. Contrary to American Glass's argument, R.C. 4115.13(H)(1) and 4115.071(C) require that a certified payroll report must include "fringe payments."

{¶ 19} Despite the statutory language, American Glass asserts that industry practice involves filing the required payroll report but waiting some time before making payments to a pension plan. Even if the industry standard or some other policy allows contractors to wait a defined period of time before depositing payment into a pension fund, American Glass was outside any such time period, rendering its argument unpersuasive. American Glass did not make payments to its employees' pension plans until April 2007, more than a year after American

Glass certified fringe payments and only after the Department of Commerce initiated its investigation into American Glass's pension payments. Moreover, Pruneau expressly testified that although it was always her intention to pay the fringe benefits, she did not do so because American Glass did not have the funds to make the payments.

{¶ 20} The common pleas court did not err in concluding that American Glass intentionally violated R.C. 4115.13(H)(1) when it certified fringe payments and that the company knew it lacked the income to actually make those payments and did not make fringe-benefit payments for over a year after its certification. The largely undisputed factual record supports the trial court's determination that substantial, reliable, and probative evidence supports the department's final order finding that American Glass intentionally violated R.C. 4115.13(H)(1), a decision that is in accordance with law.

## 2. Timeliness of Investigation

{¶ 21} American Glass next argues that the department's investigation into the prevailing-wage-law violation was untimely because the investigator did not begin her investigation until April 3, 2007, more than five days after the complaint was filed. Accordingly, American Glass asserts, the common pleas court erred in affirming the final order stemming from that investigation.

{¶ 22} According to R.C. 4115.13(A), the director of commerce shall investigate any alleged violation of Ohio's Prevailing–Wage Law "within five days of the filing of the complaint." The complaint against American Glass was prepared on March 19, 2007, and filed with the department on March 22, 2007. The assistant chief of the department testified that she reviewed the complaint, initialed it, and assigned the complaint to an investigator that same day. The superintendent of the Division of Labor and Worker Safety for the Department of Commerce, testified that the assistant chief's review of the complaint "starts the investigation process."

{¶ 23} With that record, the department determined that the investigation was timely, and the common pleas court accepted the department's interpretation of the timeliness requirement. "The Ohio Supreme Court has * * * recognized that '[a] court must give due deference to the agency's reasonable interpretation of the legislative scheme.' " *State ex rel. Newark v. Indus. Comm.*, 10th Dist. No. 05AP–1118, 2006-Ohio-5033, 2006 WL 2780927, ¶ 6, quoting *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad* (2001), 92 Ohio St.3d 282, 287, 750 N.E.2d 130. Under the department's interpretation of R.C. 4115.13(A), the investigation into American Glass's conduct was timely. Even apart from the department's interpretation of R.C. 4115.13(A), the statutory scheme indicates that the time provisions of the statute are directory, not mandatory.

{¶ 24} American Glass premises its argument on the statutory language. Because the statute uses "shall" in describing the time frame within which the investigation prescribed under the statute is to begin, American Glass asserts that the statute is mandatory. See *Ohio Civ. Rights Comm. v. Countrywide Home Loans,* 99 Ohio St.3d 522, 2003-Ohio-4358, 794 N.E.2d 56, ¶ 4 (construing R.C. 4112.05(B)(7) to be mandatory, not directory, in providing that any complaint the Ohio Civil Rights Commission issued, based on the filing of a charge of unlawful discriminatory practice, "shall be so issued within one year after the complainant filed the charge").

{¶ 25} In *Countrywide,* the Supreme Court concluded, " '[T]he word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.' " Id. at ¶ 4, quoting *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. In so determining, the court decided that R.C. 4112.05(B)(7) is a statute of limitations and that the one-year time limit contained in the statute for filing an administrative complaint is mandatory. Id. at ¶ 6.

{¶ 26} The court's construction of R.C. 4112.05(B)(7) in *Countrywide* does not control the proper construction of R.C. 4115.13(A), because of significant differences in the two statutes. *Countrywide* involved a time limit on when a complaint is filed. American Glass, by contrast, does not assert that the complaint was not timely filed; rather, its argument involves procedural time limits after the commission properly issued its complaint. The mandatory rule applied in *Countrywide* and *Dorrian* does not pertain when the statutory language at issue relates to "the manner or time in which power or jurisdiction vested in a public officer is to be exercised." *Schick v. Cincinnati* (1927), 116 Ohio St. 16, 155 N.E. 555, paragraph one of the syllabus.

{¶ 27} Notwithstanding *Countrywide,* the general rule is that " ' "a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." ' " *Hardy v. Delaware Cty. Bd. of Revision,* 106 Ohio St.3d 359, 2005-Ohio-5319, 835 N.E.2d 348, ¶ 22, quoting *State ex rel. Ragozine v. Shaker,* 96 Ohio St.3d 201, 2002-Ohio-3992, 772 N.E.2d 1192, ¶ 13, quoting *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, paragraph three of the syllabus. Accordingly, a statute will be construed as directory " 'unless the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer.' " *In re Davis* (1999), 84 Ohio St.3d 520, 522, 705 N.E.2d 1219, quoting *State ex rel. Smith v. Barnell* (1924), 109 Ohio St.

246, 255, 142 N.E. 611. See also *Schick* at paragraph one of the syllabus ("Statutes which relate to the manner or time in which power or jurisdiction vested in a public officer is to be exercised, and not to the limits of the power or jurisdiction itself, may be construed to be directory, unless accompanied by negative words importing that the act required shall not be done in any other manner or time than that designated"). Had the General Assembly intended R.C. 4115.13(A)'s time frames to be jurisdictional in nature, it could have explicitly so stated. See, e.g., R.C. 4735.32.

{¶ 28} Because the time frames provided in R.C. 4115.13(A) are directory, the department did not lose jurisdiction, even if it failed to act within the statutory time periods. As a result, in claiming reversible error in the department's alleged failure to meet the statutory time limits, American Glass also must demonstrate prejudice. *Hughes v. Ohio Real Estate Comm.* (July 22, 1999), 8th Dist. No. 74480, 1999 WL 528506, citing *In re Heath* (1992), 80 Ohio App.3d 605, 608, 609 N.E.2d 1346. American Glass neither alleged nor demonstrated any prejudice resulting from any delays in the investigation. Accordingly, American Glass's timeliness argument is without merit.

## B. Dorsey

{¶ 29} Dorsey also advances two arguments to reverse the common pleas court's decision to uphold the department's final order finding an intentional violation of R.C. 4115.13(H)(4). Dorsey initially argues that the common pleas court erred in finding no due process violation when the notice letter explicitly charged Dorsey with a violation of R.C. 4115.13(H)(1) but the department ultimately concluded that Dorsey had violated R.C. 4115.13(H)(4). Secondly, Dorsey, like American Glass, argues the department's investigation into the matter was untimely.

### 1. Due Process

{¶ 30} When an administrative agency proposes to take disciplinary action against a party, R.C. 119.07 requires the agency to "give notice to the party informing the party of the party's right to a hearing." The notice "shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days." R.C. 119.07.

{¶ 31} "The fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard." *Korn v. Ohio State Med. Bd.* (1988), 61 Ohio App.3d 677, 684, 573 N.E.2d 1100, citing *Luff v. State* (1927), 117 Ohio St. 102, 157 N.E. 388. " 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Althof v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP–1169, 2007-Ohio-1010, 2007 WL 701572, ¶ 19, quoting *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865. "'"The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them."'" Id., quoting *Gonzales v. United States* (1955), 348 U.S. 407, 414, 75 S.Ct. 409, 99 L.Ed. 467, fn. 5, quoting *Morgan v. United States* (1938), 304 U.S. 1, 18, 58 S.Ct. 773, 82 L.Ed. 1129. Within those parameters, the issue here resolves to whether appellants had a reasonable opportunity to know that it was charged with a violation of R.C. 4115.13(H)(4), an intentional failure to pay the prevailing wage.

{¶ 32} In dismissing Dorsey's appeal, the common pleas court noted that although the department found that Dorsey had violated R.C. 4115.13(H)(4), Dorsey's conduct actually constituted a violation of R.C. 4115.13(H)(1). As a result, the common pleas court did "not find merit" in Dorsey's argument that it had not received proper notice of the claims against it. Explaining its conclusion, the common pleas court stated that "notice and precise notice are two distinct issues," and that since Dorsey's notice letter included a general reference to R.C. Chapter 4115, the notice that it received was not prejudicial. The common pleas court emphasized that R.C. 4115.13(H) defines an intentional violation as "includ[ing], but * * * not limited to," subsections (1) through (6) of R.C. 4115.13(H).

{¶ 33} Dorsey initially responds that the common pleas court lacks the authority to change the nature of the charged offense to correct the department's error in finding a violation of a section not specified in the notice letter. Secondly, Dorsey argues that the notice letter that the department sent to it specifically charged Dorsey with a violation of R.C. 4115.13(H)(1), not a general violation of R.C. Chapter 4115, rendering the notice provided to Dorsey insufficient to find a violation of R.C. 4115.13(H)(4).

{¶ 34} Were an appeal available to the Commerce Department and pursued, the common pleas court well may have concluded that the hearing examiner had erred in finding no violation of R.C. 4115.13(H)(1). See R.C. 119.12 (stating that absent a finding that reliable, probative, and substantial evidence supports the order of the administrative agency, the common pleas court "may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law"). In the absence of such proceedings, however, the notice issue is pertinent. To conclude otherwise would create the undesirable situation in which an administrative

agency could provide notice to a party regarding one specific charge but subsequently find that party violated an entirely different charge within the code chapter at issue. That procedure would seriously undermine the purpose of the notice requirement and the protections that it is designed to afford. Whether Dorsey received proper notice of a violation of R.C. 4115.13(H)(4) is a valid issue for review.

{¶ 35} To support its conclusion that the notice Dorsey received did not prejudice it, the common pleas court relied on this court's decision in *Fehrman v. Ohio Dept. of Commerce* (2001), 141 Ohio App.3d 503, 751 N.E.2d 1089. In *Fehrman*, the appellant was given notice that the Commerce Department would be "considering whether he was of good business repute, as defined in Ohio Adm.Code 1301:6–3–19(D)(7) and (9)." Id. at 511. This court held that even though the appellant "was not given notice of one specific subsection of Ohio Adm.Code 1301:6–3–19(D), he clearly had adequate notice of the issues * * * to be considered at the hearing" as well as "the opportunity to present evidence in his favor on these issues." Id. (noting that "there was a basis for appellee's finding that appellant was not of good business repute under the subsections of Ohio Adm.Code 1301:6–3–19(D) for which appellant was given notice"). On those facts, this court concluded that the appellant in *Fehrman* suffered no prejudice stemming from the general notice.

{¶ 36} Dorsey's notice differs in specificity from the one at issue in *Fehrman*. It stated that "[b]ased upon documentation" that the department had received "during its investigation into this matter, Commerce has determined" that Dorsey and Pruneau "violated R.C. 4115.13(H)(1) by knowingly submitting false or erroneous reports" and attesting that "the fringe benefits were paid as indicated on the certified payroll reports," since Dorsey and Pruneau "did not make the above-mentioned fringe benefit payments until approximately May 2007." The notice letters thus did not allege a general violation of R.C. Chapter 4115, but alleged a very specific violation of R.C. 4115.13(H)(1) and failed to refer to R.C. 4115.13(H)(4).

{¶ 37} The record here contains an additional factor that distinguishes *Fehrman*. During the hearing, Dorsey's counsel read from the notice letter and specifically referred to R.C. 4115.13(H)(1). Both parties then stipulated that "the only charges we're talking about are what [the department has] listed in this letter." Both the notice that the department sent to Dorsey and the steps taken at the hearing to clarify the charge against Dorsey undermine the department's contention that Dorsey was on notice of more than charges under R.C. 4115.13(H)(1). To the contrary, the parties' stipulation confirms Dorsey's expectation that it needed to defend against only the specific allegation of an intentional violation under R.C. 4115.13(H)(1). Given the specificity of the notice letter

and the stipulation before the hearing examiner, Dorsey did not receive adequate notice that it faced a potential violation of R.C. 4115.13(H)(4).

{¶ 38} Commerce argues that even if the notice was less than it should have been, Dorsey suffered no prejudice because notice of one necessarily provides notice of the other, given the similarity between R.C. 4115.13(H)(1) and (H)(4). An intentional violation under R.C. 4115.13(H)(1) involves "[a]n intentional failure to submit reports as required under [R.C. 4115.071(C) ] or knowingly submitting false or erroneous reports." By contrast, R.C. 4115.13(H)(4) defines "intentional violation" as including "[a]n intentional failure to pay the prevailing wage."

{¶ 39} Although under certain circumstances a contractor or subcontractor could violate both subsections with substantially similar conduct, that result is not preordained. For example, if a contractor paid the required prevailing wage but failed to file the necessary report, the contractor arguably would violate R.C. 4115.13(H)(1) but not R.C. 4115.13(H)(4). Conversely, if the contractor intentionally failed to pay prevailing wages but nonetheless filed the required report that accurately so stated, then the contractor arguably would violate R.C. 4115.13(H)(4) but not R.C. 4115.13(H)(1). See the hearing examiner's explicit conclusion that the department "did not prove a clear violation of R.C. 4115.13(H)(1)," yet still finding that Dorsey had violated R.C. 4115.13(H)(4), a conclusion that the department did not modify in its final order adopting the hearing examiner's report and recommendation.

{¶ 40} Unlike those examples, the facts here suggest a violation of both sections, and, but for the specificity of the stipulations before the hearing examiner, we might find the department's argument more persuasive. But we cannot ignore that had Dorsey known that other potential charges were at issue, it may have presented additional or different evidence, or even used a different defense strategy, in light of the additional charge. Because of the undisputed assurance given to Dorsey that only a violation of R.C. 4115.13(H)(1) was at issue, we are compelled to conclude that the notice to Dorsey was insufficient to alert Dorsey that charges under R.C. 4115.13(H)(4) were at issue.

{¶ 41} Accordingly, Dorsey has demonstrated prejudice from the Department of Commerce's failure to provide adequate notice that Dorsey faced a charge under R.C. 4115.13(H)(4), since Dorsey confined its defense to an alleged violation of R.C. 4115.13(H)(1) and did nothing to attempt to refute a charge under R.C. 4115.13(H)(4). The common pleas court erred in determining that Dorsey was not prejudiced from the inadequate notice.

### 2. Timeliness of Investigation

{¶ 42} Similar to the argument that American Glass advanced, Dorsey also asserts that the department did not timely commence the investigation against it.

For the same reasons set forth in addressing American Glass's timeliness argument, Dorsey's contentions are unpersuasive.

## V. Disposition

{¶ 43} The common pleas court did not abuse its discretion in determining that reliable, probative, and substantial evidence supports the department's order concluding that American Glass committed an intentional violation of R.C. 4115.13(H)(1). The common pleas court, however, erred when it in effect affirmed the department's order finding that Dorsey had violated R.C. 4115.13(H)(4), since Dorsey did not have adequate notice of the charges against it. Finally, the department timely commenced the investigations against both American Glass and Dorsey. Accordingly, we overrule in part and sustain in part appellants' assignment of error, and we affirm in part and reverse in part the judgments of the Franklin County Court of Common Pleas and remand with instructions to reverse the department's order against Dorsey.

Judgments affirmed in part
and reversed in part,
and cause remanded with instructions.

TYACK, P.J., and FRENCH, J., concur.