**[Cite as *JG City L.L.C. v. State Pharmacy Bd.*, 2021-Ohio-4624.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| JG City LLC, | : | |
| Appellant-Appellant, | : | No. 21AP-38 |
| | | (C.P.C. No. 20CV-2443) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State of Ohio Board of Pharmacy, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on December 30, 2021

**On brief:** *Loevy & Loevy*, *Frank Newell* and *Michael Kanovitz*, and *Law Office of Michele Berry*, *Michele Berry* for appellant. **Argued:** *Michael Kanovitz.*

**On brief:** *Dave Yost, Attorney General* and *Henry G. Appel*, for appellee. **Argued:** *Henry G. Appel.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Appellant-appellant, JG City LLC, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order issued by appellee-appellee, Ohio Board of Pharmacy (the "Board"), denying JG City's application for a license to operate a retail medical marijuana dispensary.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The General Assembly enacted House Bill 523 in 2016, creating the Ohio Medical Marijuana Control Program. 2016 Sub.H.B. No. 523; R.C. 3796.02. The Board and the Ohio Department of Commerce administer the Ohio Medical Marijuana Control Program. R.C. 3796.02. The Board's duties include licensing retail medical marijuana

dispensaries. *Id.* The Board has promulgated rules, contained in Ohio Adm.Code Chapter 3796:6, to govern the licensure and operations of dispensaries.

{¶ 3} The Board was authorized to issue up to 60 dispensary licenses during the initial licensure period. Ohio Adm.Code. 3796:6-2-05(A). The Board divided the state into 31 dispensary districts and determined the maximum number of licenses to be issued in each dispensary district. The Board's rules provided that no owner could be issued more than 5 dispensary licenses statewide nor more than 66 percent of the licenses available within a multi-license district. Ohio Adm.Code. 3796:6-2-04(C)(1)(b)-(c).

{¶ 4} The Board issued its first request for applications ("RFA") for dispensary licenses in September 2017. The Board also issued instructions explaining how applications would be evaluated and scored. JG City applied for a license to operate a dispensary in Toledo, Ohio, which is in the Northwest-3 district. A maximum of two licenses were available in Northwest-3. Once the review and scoring of applications was completed, JG City's application received the third-highest score among the applicants in Northwest-3.[1] Because JG City's score was not high enough to qualify for a license in Northwest-3, the Board issued a notice of intent to deny JG City's application.

{¶ 5} JG City requested an administrative hearing, which was held on October 7, 2019. The Board argued it substantially complied with the RFA in scoring the applications. JG City argued the scoring system the Board used could not reliably distinguish between applications receiving scores as close as those given to JG City and its next closest competitor. JG City further argued the Board failed to adhere to the scoring system published in the RFA instructions and allowed evaluators to give scores for which there was no published guidance. The Board presented testimony from Erin Reed ("Reed"), its Director of Medical Marijuana, and Thomas Williams ("Williams"), a compliance enforcement agent for the Medical Marijuana Control Program and evaluator for dispensary license applications. JG City presented testimony from Jenni Wai ("Wai"), the Board's Chief Pharmacist, who also served as an evaluator for dispensary license applications.

---

[1] Under the Board's scoring system, JG City's application received an aggregate score of 180.642849. The licenses for the Northwest-3 district were issued to 127 OH, LLC, which received a score of 189.380942, and GTI Ohio, LLC, which received a score of 183.59523.

{¶ 6} The Hearing Examiner issued a report and recommendation finding the Board met its burden of proof in showing substantial compliance with the RFA and that JG City did not score high enough to receive a license. She further found the burden shifted to JG City to prove bad faith or abuse of discretion by the Board, and that JG City failed to meet that burden. The Hearing Examiner recommended that the Board affirm the notice of intent and deny JG City's application for a dispensary license.

{¶ 7} JG City filed objections to the Hearing Examiner's report and recommendation, arguing the Board failed to comply with its rules because it did not follow the scoring system published in the RFA instructions. JG City also argued, for the first time, that the Board unconstitutionally discriminated against JG City based on a statutory provision requiring at least 15 percent of dispensary licenses to be issued to entities owned and controlled by members of certain economically disadvantaged groups ("EDG"). JG City's objections were considered at a meeting of the Board on March 3, 2020. On March 11, 2020, the Board issued an order confirming and approving the Hearing Examiner's report and recommendation, and denying JG City's application for a dispensary license.

{¶ 8} JG City appealed the Board's order to the Franklin County Court of Common Pleas, pursuant to R.C. 119.12. JG City argued the Board's order was not supported by reliable, probative, and substantial evidence, and was not in accordance with law, because the Board failed to adhere to the scoring system contained in the RFA instructions. JG City also argued the Board violated its constitutional rights by awarding licenses to lower scoring EDG-owned applicants. The Board argued it substantially complied with the terms of the RFA, that JG City failed to exhaust its administrative remedies by not raising the constitutional claim before the Hearing Examiner, and that JG City failed to demonstrate prejudice from EDG license provision.

{¶ 9} The trial court affirmed the Board's March 11, 2020 order denying JG City's application, concluding there was "overwhelming evidence that the Board complied with its application process." (Decision & Entry at 5.) The court also found JG City failed to show it was prejudiced by the scoring system the Board used to evaluate applications. Regarding JG City's constitutional claim, the trial court held JG City waived an as-applied challenge to the statute by failing to raise it before the Hearing Examiner; the court further concluded the challenged statutory provision was not facially unconstitutional or

unconstitutional as applied to the facts of the case. JG City timely appealed the trial court's judgment.

## II. PRELIMINARY MATTERS

{¶ 10} We begin with two preliminary matters before considering JG City's assignments of error. First, the Board asserts we lack subject-matter jurisdiction over this appeal. Second, the Board has moved to strike a filing made by JG City following oral argument.

### A. Subject-matter jurisdiction over JG City's appeal

{¶ 11} The Board moved to dismiss JG City's appeal to the common pleas court, arguing the court lacked subject-matter jurisdiction over the appeal. The Board argued JG City was required to file its action in Hamilton County, because it listed a Cincinnati location as its business address on its dispensary application and its statutory agent was located in Cincinnati, or in Lucas County, because it applied to operate a dispensary in Toledo. JG City opposed the motion to dismiss, asserting the appeal was properly filed in Franklin County because it was a resident of Illinois and had no place of business in Lucas County. The trial court denied the Board's motion, concluding it had subject-matter jurisdiction over the appeal under R.C. 119.12(A)(3) because JG City had not received a license to operate a dispensary or otherwise conducted business in Lucas County and was not a resident of Hamilton County, where its registered agent was located. [2]

{¶ 12} The Board did not cross-appeal the trial court's denial of its motion to dismiss nor has it moved to dismiss the appeal in this court; however, in its brief on appeal, the Board asserts we lack subject-matter jurisdiction over the appeal. We have previously held "the filing of a cross-appeal is not a prerequisite to challenging a court's subject-matter jurisdiction, as subject-matter jurisdiction cannot be waived and may be raised at any time." *Cabot III-OH1M02, LLC v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 13AP-232,

---

[2] In support of its ruling, the trial court noted R.C. 119.12(A)(1) refers to the place of business or the residence of the *licensee*, but the term licensee is not used in R.C. 119.12(A)(3). The trial court reasoned JG City was never a licensee because its application for a license had been denied and found this supported JG City's assertion it was entitled to file its appeal in Franklin County under R.C. 119.12(A)(3). The Supreme Court of Ohio has rejected this reading of the statute, holding that "in order to give meaning to all its provisions, [R.C. 119.12] must be interpreted as if the word 'licensee,' is interchangeable with the words, 'such party,' where it relates to place of business or residence." *Welsh v. Ohio State Med. Bd.*, 168 Ohio St. 520, 522 (1959).

2013-Ohio-5301, ¶ 13. Accordingly, we must determine whether we have subject-matter jurisdiction over JG City's appeal.

{¶ 13} "Except as provided in [R.C. 119.12(A)(2) or (3)], any party adversely affected by any order * * * denying the issuance or renewal of a license * * * may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident." R.C. 119.12(A)(1). The first exception, R.C. 119.12(A)(2), governs appeals from certain specified agencies and does not apply to JG City's appeal because the Board is not one of the specified agencies. The second exception, R.C. 119.12(A)(3), functions as a catch-all provision, specifying "[i]f any party appealing from an order described in [R.C. 119.12(A)(1)] is not a resident of and has no place of business in this state, the party may appeal" to the Franklin County Court of Common Pleas.

{¶ 14} Throughout the proceedings, JG City has maintained it is a resident of Chicago, Illinois. JG City is registered with the Ohio Secretary of State as a domestic for-profit limited liability company. The articles of organization were filed by Loevy & Loevy of Chicago, Illinois, and named Incorp Services, Inc., of Cincinnati, Ohio, as JG City's statutory agent. Other than naming a registered agent located in Cincinnati, there is no evidence in the record establishing JG City conducted business or had any other contact with Hamilton County. With respect to activities in Lucas County, JG City's application to operate a dispensary in Toledo was denied and, other than signing a letter of intent to lease the location for that dispensary, there is no evidence in the record showing JG City conducted any business in Lucas County. In response to the Board's motion to dismiss in the common pleas court, JG City submitted an affidavit from its registered agent averring JG City never had any business operations in Toledo or anywhere else in Lucas County. The agent further averred that since the receiving the notice of intent to deny its application, JG City's activity in Ohio had been limited to pursuing the administrative process in Columbus.

{¶ 15} Under these circumstances, we conclude JG City was not a resident of and had no place of business in Ohio. Therefore, JG City's appeal was properly filed in the Franklin County Court of Common Pleas pursuant to R.C. 119.12(A)(3). Because the appeal was properly filed in the Franklin County Court of Common Pleas, we have jurisdiction over JG City's appeal from that court's judgment. *See* R.C. 119.12(N) ("The judgment of the court

[of common pleas] shall be final and conclusive unless reversed, vacated, or modified on appeal."); R.C. 2501.02 ("[T]he court [of appeals] shall have jurisdiction upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district.").

### B. Motion to strike JG City's response to the Board's notice of supplemental authority

{¶ 16} After oral argument, the Board filed a notice of supplemental authority providing citations for two decisions its counsel referred to during oral argument. The following day, JG City filed a response to the notice of supplemental authority, asserting the two cited decisions were distinguishable and arguing we should apply a different standard of review than that employed in the two cited decisions. The Board then moved to strike JG City's response, alleging it was effectively an additional reply brief. JG City filed a further response, arguing the motion to strike should be denied because it was entitled to respond to the Board's notice of supplemental authority.

{¶ 17} App.R. 21(I) provides for citation of additional authorities presented at oral argument but not cited in a party's brief. Generally, such authorities should be presented to the court and opposing counsel "at least five days prior to oral argument," but the rule further acknowledges there may be "good cause for a later presentment." App.R. 21(I). Here, the Board's notice of supplemental authority provided the Court with citations for two decisions that were briefly discussed at oral argument but had not been cited in the Board's brief. The notice of supplemental authority did not contain any argument related to those decisions. Additionally, there is no indication the Board attempted to obfuscate by failing to cite the decisions in its brief. The Board's brief clearly set forth its argument that it had substantially complied with the conditions of its RFA. The Board's counsel made a passing reference to the two decisions at oral argument, consisting of less than 30 seconds, as examples of cases where substantial compliance did not occur. Although JG City may not have been aware the Board would refer to those specific decisions, it was on notice of the legal principles underlying the Board's argument. Under these circumstances, because the two decisions were mentioned at oral argument but had not been cited in the Board's brief, the Board complied with App.R. 21(I) by filing a notice of supplemental authority after oral argument.

{¶ 18} The Board asserts JG City's response to the notice of supplemental authority should be struck because it is an improper reply brief. "A 'brief' is '[a] written statement setting out the legal contentions of a party in litigation, esp[ecially] on appeal; a document prepared by counsel as the basis for arguing a case, consisting of legal and factual arguments and the authorities in support of them.' " *Slats & Nails Pallets, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-690, 2015-Ohio-1238, ¶ 14, quoting *Black's Law Dictionary* 230 (10th Ed.2014). App.R. 16(C) states an appellant may file a brief in reply to the appellee's brief and, where there is a cross-appeal, the appellee may file a brief in reply to the appellant's brief in response to the cross-appeal. The rule further provides that "[n]o further briefs may be filed except with leave of court." App.R. 16(C).

{¶ 19} We construe JG City's "response" to the Board's notice of supplemental authority to be a brief because it contained JG City's "legal and factual arguments" seeking to distinguish the cases cited in the notice of supplemental authority. *Slats & Nails* at ¶ 14. JG City previously submitted a reply brief in response to the Board's brief. Under App.R. 16(C), no further brief beyond a reply brief is permitted without leave of court. JG City did not seek leave of court to file its response to the Board's notice of supplemental appeal. Accordingly, we grant the Board's motion to strike JG City's response to the Board's notice of supplemental authority and will not consider the arguments contained in that response. *See In re L.M.*, 2d Dist. No. 2010-CA-76, 2011-Ohio-3285, ¶ 13 n. 1 (refusing to consider a response brief filed by a party because it was a surreply brief to another party's reply brief and leave had not been sought to file the response brief); *McIntyre v. McIntyre*, 7th Dist. No. 03 CO 63, 2005-Ohio-7083, ¶ 14 (refusing to consider supplemental brief and attachments because "the rules of appellate procedure do not allow any additional briefs without leave of court, and none was requested in the instant cause").

## III. ASSIGNMENTS OF ERROR

{¶ 20} JG City assigns the following as trial court error:

> [1.] The Common Pleas Court erred in ruling that the Ohio Board of Pharmacy ("Board") met its burden under R.C. 119.12 to show reliable evidence for its order denying Appellant's application for a marijuana license where the application graders failed to follow the Board's published grading procedure and there was no evidence that the *ad hoc* system they used could reliably distinguish a 1.6% difference

between Appellant and the next highest scorer to whom the Board awarded the license.

[2.] The Common Pleas Court erred in ruling that Board met its burden under R.C. 119.12 to show that its order conformed to the law where the graders violated the Board's published rules and used *ad hoc* scores for which no criteria were provided.

[3.] The Common Pleas Court erred in requiring Appellant to demonstrate prejudice from the use of an *ad hoc* grading process that was not in accordance with the law.

[4.] The Common Pleas Court erred in ruling that Appellant failed to demonstrate sufficient prejudice to require reversal.

[5.] The Common Pleas Court erred in ruling that Appellant waived its Equal Protection challenge by presenting it to the Ohio Board of Pharmacy in the first instance without prior presentation to a hearing examiner and in holding that the statute is not facially unconstitutional, regardless.

## IV. STANDARD OF REVIEW

{¶ 21} When reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence, and whether the order is in accordance with law. *Seman v. State Med. Bd. of Ohio*, 10th Dist. No. 19AP-613, 2020-Ohio-3342, ¶ 15, citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). Evidence is reliable when there is " 'a reasonable probability that the evidence is true,' " probative when it " 'tends to prove the issue in question,' " and substantial when it has " 'importance and value.' " *Id.*, quoting *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). The common pleas court conducts " 'a hybrid review in which [it] "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' " *Id.* at ¶ 16, quoting *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The court must give deference to the agency's resolution of evidentiary conflicts, but the agency's findings are not conclusive. *Id.* In determining whether an agency order is in accordance with law, the common pleas court undertakes a de novo review and exercises its independent judgment. *Id.*

{¶ 22} Appellate review of a common pleas court's decision in an appeal from an administrative agency is more limited. *Id.* at ¶ 17. We "determine only whether the common pleas court abused its discretion." *Id.* " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). On purely legal questions, however, we exercise de novo review. *Smith v. Ohio Casino Control Comm.*, 10th Dist. No. 19AP-237, 2019-Ohio-4870, ¶ 15.

## V. LEGAL ANALYSIS

### A. Whether the Board's order was supported by reliable, probative, and substantial evidence and in accordance with law

{¶ 23} JG City's first assignment of error challenges the trial court's conclusion that the Board's order was supported by reliable evidence. Its second assignment of error challenges the trial court's conclusion that the Board's order was in accordance with law. Because these assignments of error are interrelated, we will consider them together.

{¶ 24} JG City's primary challenge to the Board's order is contained in its second assignment of error, in which it argues the Board failed to comply with the law when it allowed application evaluators to award odd-number scores rather than limiting them to the even-number scores shown in the RFA instructions. JG City argues this resulted in an 11-point grading scale (i.e., all whole numbers from zero through ten), rather than a 6-point grading scale (i.e., all even numbers from zero through ten). JG City further asserts application evaluators were not given criteria for awarding odd-number scores. JG City claims allowing odd numbers in the scoring system violated Ohio Adm.Code 3796:6-2-04 and, therefore, the Board's order denying JG City's application based on the score it received under that system was not in accordance with law.

{¶ 25} In the context of a 'disappointed bidder' for a public contract, the Supreme Court of Ohio has held that a public entity is "bound to follow the conditions it ha[s] set for itself in the [request for proposal] document." *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 604 (1995). In *Danis*, a solid waste management district issued a request for proposals for design, construction, and operation of waste management facilities. *Id.* at 591-92. The request for proposals did not involve execution of a contract on simple acceptance by the district; rather, it contemplated an award of the

opportunity to further negotiate a possible contract. *Id.* at 599. One of the unsuccessful bidders claimed this violated competitive bidding requirements. *Id.* at 594.

{¶ 26} On appeal, the Supreme Court found the district was not required by statute to engage in competitive bidding. *Id.* at 603. The court further noted the district had incorporated several components of the statutory competitive bidding process, such as sealed bids, performance bonds, and public opening of bids, into its request for proposals. *Id.* Although the district was not bound to follow all aspects of the competitive bidding process, it was required to comply with the components it had voluntarily incorporated in the request for proposals. The court held a public entity "may by its actions commit itself to follow rules it has itself established, including rules governing the evaluation of proposals where statutory competitive bidding is not required." *Id.* Under the facts in *Danis*, the court found an injunction was not warranted because the district had "substantially complied with the procedures it had announced in its RFP." *Id.* at 604. *See also AIDS Taskforce of Greater Cleveland v. Ohio Dept. of Health*, 8th Dist. No. 105971, 2018-Ohio-2727, ¶ 24 (holding that an "agency's substantial compliance with [its] RFP is sufficient"); *Aetna Better Health, Inc. v. Colbert*, 10th Dist. No. 12AP-720, 2012-Ohio-6206, ¶ 32 ("What is required is that ODJFS deal in good faith with bidders and comply with the terms of the RFA.").

{¶ 27} Generally, public entities have wide discretion in determining the best bidder for a public works contract. *State ex rel. Associated Builders v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199, ¶ 22-24. Similarly, the Board is vested with broad authority under the Ohio Medical Marijuana Control Program. *See* R.C. 3796.02 and 3796.14(B); *State ex rel. CannAscend Ohio, L.L.C. v. Williams*, 10th Dist. No. 18AP-820, 2020-Ohio-359, ¶ 41. Thus, although *Danis* involved a request for injunctive relief to prevent the awarding of a contract, rather than an appeal under R.C. 119.12, the general principle that a public entity must substantially comply with the conditions it sets for itself in a request for proposals or request for applications applies equally in this case. Just as the waste management district in *Danis* was bound to follow the conditions in its request for proposals, here the Board was required to follow the criteria set forth in its RFA. If the Board substantially complied with those criteria, its denial of JG City's application was in accordance with law.

{¶ 28} At the time of JG City's application, Ohio Adm.Code 3796:6-2-04(A) required the Board to "evaluate each complete application submitted in accordance with [Ohio Adm.Code 3796:6-2-01] and award dispensary licenses on a competitive basis using the criteria set out in the notice for applications."[3] As relevant to this appeal, at the time of JG City's application, Ohio Adm.Code 3796:6-2-01(B)(1) required the Board's RFA to include "[t]he scoring procedure that will be used to evaluate completed applications, including point values that will be allocated to each applicable portion of the application."[4]

{¶ 29} The RFA instructions issued by the Board stated that all applications meeting certain minimum threshold requirements would be scored by an evaluation team. The evaluated questions included both pass/fail questions and "scorable" questions. There were 23 scorable questions related to an applicant's business plan, operations plan, and patient care plan. Each scorable question would be given equal weight in determining the total application score. The RFA instructions stated "[s]corable question responses will be evaluated using a standard 0-10 scoring framework as illustrated in the table below along with the evaluation criteria used to assign each score." (Ohio Medical Marijuana Control Program Dispensary Application Instructions, Board's Hearing Ex. 3, at 12.) The table appeared in the instructions as shown here:

| Score | Description |
|---|---|
| 10 | Applicant response substantially exceeds all requirements as stated in the question and associated statutes and rules; very strong supporting evidence with relevant examples where applicable; demonstrated approach shows additional value clearly linked to delivering desired MMCP outcomes. |
| 8 | Applicant response meets all requirements and in some areas exceeds requirements as stated in the question and associated statutes and rules; strong supporting evidence with examples where applicable; demonstrated approach shows some additional value that support desired MMCP outcomes. |
| 6 | Applicant response meets all requirements as stated in the question and associated statutes and rules; supported by evidence and examples relevant to the response. Limited additional value demonstrated. |
| 4 | Applicant response meets most, but not all requirements as stated in the question and associated statutes and rules; supported by some limited evidence or examples that may be somewhat applicable to the response; no additional value demonstrated. |
| 2 | Applicant response meets a limited number of requirements as stated in the question and associated statutes and rules; very limited evidence or examples to support statements, or with limited relevance. |
| 0 | Applicant response does not meet requirements as stated in the question and associated statutes and rules; no evidence or examples to support statements. |

---

[3] Ohio Adm.Code 3796:6-2-04 was subsequently amended, effective September 10, 2021.
[4] Ohio Adm.Code 3796:6-2-01 was subsequently amended, effective September 10, 2021.

(Ohio Medical Marijuana Control Program Dispensary Application Instructions, Board's Hearing Ex. 3, at 13.)

{¶ 30} Once dispensary applications were received, they were evaluated by four teams of "subject matter experts" retained by the Board. (Oct. 7, 2019 Tr. at 21.) When reviewing the applications, evaluators were permitted to award a score of any whole number between zero and ten, including odd numbers, to the scorable questions. Regarding the use of odd numbers in scoring applications, Reed testified the Board decided to permit evaluators to use odd numbers "before we published the application." (Oct. 7, 2019 Tr. at 52.) When asked why the table included in the RFA instructions did not include odd numbers, Reed explained this was based on an assessment of best practices:

> We looked at best practices in the State when, and in procurement from around the country and they don't all, they don't provide that level of specificity for those intermediate numbers in those cases.
>
> And so we tried to follow those best practices and those best practices allowed for that discretion for somebody who's evaluating a particular set of facts that their scoreable response to assess whether they need some type of intermediate score between what was assigned and the instructions.

(Oct. 7, 2019 Tr. at 53.)

Reed explained "odd scores were the equivalent of our decimal, they were our half point in this case." (Oct. 7, 2019 Tr. at 54.) Reed admitted evaluators were not given specific criteria for when to award an odd number, but were told, for example, "if you think that this is a very good answer but it's not quite the [best] answer, there's some room for improvement, so it's not a 10 but you think it's better than an 8, then they could give a score of 9 in that case." (Oct. 7, 2019 Tr. at 55.) Reed further testified the phrase "standard 0 to 10" in the RFA instructions was meant to inform applicants "we were using numbers 0 to 10, whole numbers 0 to 10," with the intention that would include odd numbers. (Oct. 7, 2019 Tr. at 74.) Both Williams and Wai testified they were instructed they could award odd numbers to scorable questions.

{¶ 31} JG City argues the RFA instructions expressly forbade the use of odd-number scores because the table only included the criteria that would be used to award even-number scores. We reject JG City's interpretation of the scoring description. As explained

above, the RFA instructions provided that scorable questions would be evaluated "using a standard 0-10 scoring framework." (Ohio Medical Marijuana Control Program Dispensary Application Instructions, Board's Hearing Ex. 3, at 12.) The instructions further provided that the scoring framework was "illustrated" by the table that followed it. To "illustrate" can be defined as "to make clear by giving examples or instances." *Webster's Third New International Dictionary* 1127 (1966). Consistent with this meaning, a list intended to illustrate a topic may not be an exhaustive recitation of all aspects of that topic; for example, Evid.R. 901 "provides a non-exhaustive list of *illustrations* as *examples* of authentication conforming with the rule." (Emphasis added.) *State v. Ollison*, 10th Dist. No. 16AP-95, 2016-Ohio-8269, ¶ 47. Therefore, providing a list of the criteria for even-number scores to illustrate how a "standard 0-10 scoring framework" would be applied did not preclude the Board from allowing evaluators to award odd numbers to responses that exceeded the criteria for one even-number score but failed to satisfy the criteria for the next even-number score.

{¶ 32} Moreover, considering the evaluation process in its entirety, we conclude the Board substantially complied with the criteria and scoring procedure set forth in the RFA instructions. As specified in the instructions, evaluators awarded scores to 23 questions pertaining to the applicant's business, operations, and patient care plans. The response to each question was awarded a whole number score ranging from zero to ten. The individual evaluators' scores were averaged, and the averages were combined to compute the total score for the application. Based on the results of the scoring, the Board then granted licenses to the highest scoring applicants in each district, subject to the limits on the number of licenses that could be awarded to a single entity. When an applicant was ineligible for a license due to those limits, the Board granted the license to the next highest scoring applicant. Considered as a whole, this process satisfied the Board's obligation under Ohio Adm.Code 3796:6-2-04(A) to "award dispensary licenses on a competitive basis using the criteria set out in the notice for applications."[5] Under these circumstances, the Board evaluated dispensary applications in accordance with law and JG City's application finished third highest in a district where only two licenses were available. Therefore, the Board's order denying JG City's application was in accordance with law.

---

[5] Ohio Adm.Code 3796:6-2-04 was subsequently amended, effective September 10, 2021.

{¶ 33} JG City also claims the Board's decision was not supported by reliable evidence, effectively arguing the Board failed to establish the evaluators correctly determined its application merited a lower score than the score given to the next best application, submitted by GTI Ohio. JG City notes the total score for its application was 1.6 percent lower than GTI Ohio's score and claims "there was no showing of any kind that the graders could reliably discern a 1.6 percent difference using the *ad hoc* 11-point scale." (Appellant's Br. at 22.) JG City suggests this is analogous to a vehicle speeding case, where the reliability of a speed-measuring device is disputed. This analogy is inapt. Unlike a moving vehicle, where the speed of travel is an objective fact that can be measured, the Board's process for scoring applications for dispensary licenses necessarily involved subjective determinations because it required evaluators to assign numerical scores to narrative responses. For example, when deciding between a score of six or eight for an answer, the evaluator was required to determine whether the answer demonstrated "limited additional value" or "some additional value." Moreover, although JG City argues the Board failed to show the evaluators could reliably discern a 1.6 percent difference between its application and GTI Ohio's application, JG City has not claimed it received an incorrect score on any specific question. *Compare Buckeye Relief, L.L.C. v. State Bd. of Pharmacy*, 8th Dist. No. 109050, 2020-Ohio-4916, ¶ 21 ("There clearly is evidence that the evaluators did not fully understand the nature of Buckeye Relief's pledged capital. The scores given Buckeye Relief by three evaluators on question C-5.5 were demonstratively wrong and against the board's own evaluation criteria."). In this case, there was testimony from Reed explaining the scoring system generally, and testimony from Williams and Wai explaining how they applied the scoring system in evaluating applications. Under these circumstances, the trial court did not abuse its discretion by finding that the Board's order was supported by reliable evidence.

{¶ 34} Accordingly, we overrule JG City's first and second assignments of error.

{¶ 35} JG City's third and fourth assignments of error argue the trial court erred by requiring JG City to establish it was prejudiced by the Board's scoring system and finding it failed to demonstrate sufficient prejudice. Having concluded the trial court properly affirmed the Board's order because it was based on reliable, probative, and substantial evidence and was in accordance with law, the question of whether JG City suffered

prejudice due to the Board's scoring system is rendered moot.  Accordingly, JG City's third and fourth assignments of error are moot due to our resolution of the first and second assignments of error.

### B.  JG City's challenge to the Economically Disadvantaged Group license requirement

{¶ 36} Finally, JG City's fifth assignment of error challenges the trial court's conclusion that JG City waived its constitutional challenge to R.C. 3796.10(C) by failing to raise it before the Hearing Examiner and the court's further conclusion that the statutory provision was not facially unconstitutional.  In its objections to the Hearing Examiner's report and recommendation and in its appeal to the common pleas court, JG City challenged the constitutionality of R.C. 3796.10(C), which required the Board to "issue not less than fifteen per cent of retail dispensary licenses to entities that are owned and controlled by United States citizens who are residents of this state and are members of * * * economically disadvantaged groups" defined in the statute.  R.C. 3796.10(C).

{¶ 37} "A preliminary inquiry in all legal claims is the issue of standing."  *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶ 22.  "In Ohio, it is well established that standing to attack the constitutionality of a legislative enactment exists only where a litigant 'has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury.' "  *Id*., quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-70 (1999).  "These three factors—injury, causation, and redressability—constitute 'the irreducible constitutional minimum of standing.' "  *Moore v. City of Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 22, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Whether the facts establish standing to assert a claim is a question of law, which we review de novo.  *Cuyahoga Cty*. at ¶ 23.

{¶ 38} The Board acknowledges that in one instance, in the Southwest-7 district, the highest-scoring applicant was "displaced," and a license was awarded to a lower-scoring application submitted by an EDG-owned entity, to comply with R.C. 3796.10(C).  JG City's application was not displaced in favor of an EDG-owned entity.  Instead, it simply received the third-highest score in a district with only two licenses available.

{¶ 39} In support of this constitutional claim, JG City offers a convoluted theory involving the interaction of R.C. 3796.10(C) and Ohio Adm.Code 3796:6-2-04(C)(1)(b), which provides that no entity could be issued more than five dispensary licenses statewide. The two applications that scored higher than JG City in Northwest-3 were submitted by 127 OH and GTI Ohio. Those entities also submitted applications in multiple other districts across the state. JG City claims applications submitted by 127 OH and GTI Ohio in *other* districts were displaced in favor of applications submitted by EDG-owned entities. JG City further asserts that if those other applications had not been displaced to comply with R.C. 3796.10(C), 127 OH or GTI Ohio would have reached the five-license limit *before* being awarded licenses in Northwest-3. Therefore, JG City claims, it would have been awarded a license in Northwest-3 as the next eligible applicant.

{¶ 40} Assuming without deciding that JG City's "cascading displacement" theory could establish a sufficient direct and concrete injury to sustain a constitutional challenge, the record fails to support that theory. The administrative record before us indicates none of 127 OH or GTI Ohio's applications were displaced in favor of applications from EDG-owned entities to meet the requirements of R.C. 3796.10(C). 127 OH submitted seven applications to operate dispensaries in seven different districts. Each of 127 OH's seven applications received a score placing it first or second within its respective district, but 127 OH was only awarded five licenses. The two unsuccessful 127 OH applications were designated by the Board as "license limited" – i.e., despite receiving sufficient scores to win licenses, those licenses were not granted because 127 OH had reached the five-license limit under Ohio Adm.Code 3796:6-2-04(C)(1)(b). Similarly, GTI Ohio submitted twelve applications to operate dispensaries in four different districts. GTI Ohio's applications received scores ranging from first to ninth place within their respective districts, but GTI Ohio was only awarded five licenses. Two of the unsuccessful GTI Ohio applications were disqualified; the other five were designated by the Board as "license limited" or "license and district limited," the latter meaning GTI Ohio had reached the five-license limit and the 66 percent limitation under Ohio Adm.Code 3796:6-2-04(C)(1)(c). Thus, the record indicates that where an otherwise eligible application from 127 OH or GTI Ohio was denied, it was due to the limits under Ohio Adm.Code 3796:6-2-04(C)(1)(b) and (c), *not* because of the EDG-owned requirements under R.C. 3796.10(C). JG City has failed to demonstrate R.C.

3796.10(C) caused the denial of its application for a dispensary license; therefore, JG City cannot establish standing to challenge the constitutionality of the statute.

{¶ 41} Accordingly, we overrule JG City's fifth assignment of error.

## VI.  CONCLUSION

{¶ 42} For the foregoing reasons, we grant the Board's motion to strike JG City's response to the Board's notice of supplemental authority, and overrule JG City's first, second, and fifth assignments of error, and its third and fourth assignments of error are rendered moot.  We affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed;*
*motion to strike granted.*

KLATT, J., concurs.
JAMISON, J., concurs in judgment.
_____

JAMISON, J., concurring in judgment.

{¶ 43} I concur in judgment and decision of the majority except I would not permit the Board to file a notice of supplemental authority.

{¶ 44} During oral argument, the Board introduced two cases that had not been cited in the brief nor disclosed to JG City prior to oral argument.  Subsequently after the oral argument, the Board filed a notice of supplemental authority.  JG City filed a response to the notice of supplemental authority attempting to distinguish the two additional cases.  The Board then moved to strike JG City's response alleging the response was an additional brief.  The majority decision rules upon the Board's motion to strike JG City's response to the Board's notice of supplemental authority.

{¶ 45} Ohio App.R. 21(I) reads in pertinent part:

> Citation of Additional Authorities: If counsel on oral argument intends to present authorities not cited in the brief, counsel shall, at least five days prior to oral argument, present in writing such authorities to the court and to opposing counsel, unless there is good cause shown for later presentment.

{¶ 46} The majority makes the finding that there was good cause for the presentment of these cases during oral argument without any examples of good cause given by the Board.  The majority opinion admits that "JG City may not have been aware the

Board would refer to those specific decisions," the Board never addressed the failure to present in writing these authorities to JG City five days prior to oral argument for this court to determine whether there was good cause for later presentment.  (Majority Decision at ¶ 17.)  Because the Board made no argument that there was good cause for the presentment of the cases during oral argument not five days prior to oral argument, as the rule requires, I respectfully disagree with this court accepting the notice of supplemental authority.  This court should not determine that there is good cause, where the party has not argued good cause for its failure.  I would strike the Board's notice of supplemental authority.

{¶ 47}  Next, I considered the Board's request to strike the response to supplemental authority.

{¶ 48}  Ohio App.R. 16(C) reads in pertinent part:

> Reply brief: The appellant may file a brief in reply to the brief of the appellee, and, if the appellee has cross-appealed, the appellee may file a brief in reply to the response of the appellant to the assignments of errors presented by the cross-appeal. No further briefs may be filed except with leave of court.

{¶ 49}  The record is clear that JG City failed to request leave of this court prior to filing their reply.  I agree with the majority opinion that JG City did file a brief with legal and factual arguments seeking to distinguish the two cases.  Although I understand the argument of JG City that they should have been allowed the opportunity to reply to the notice of supplemental authority and attempt to differentiate these two cases for the court's consideration, I would strike JG City's response to the notice of supplemental authority for failure to request leave of the court before filing.

{¶ 50}  For the foregoing, I concur in judgment of the court.