[Cite as *Freeman v. Ohio Elections Comm.*, 2024-Ohio-1223.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Allen Freeman et al., | : | |
| Appellants-Appellants, | : | No. 23AP-14 |
| | | (C.P.C. No. 22CV-1290) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Elections Commission, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on March 29, 2024

**On brief:** *Isaac Wiles & Burkholder LLC*, and *Donald C. Brey, Dale D. Cook*, and *Ryan C. Spitzer*, for appellant. **Argued:** *Dale D. Cook*.

**On brief:** *Dave Yost*, Attorney General, *Andrew D. McCartney*, and *Bryan B. Lee*, for appellee. **Argued:** *Bryan B. Lee*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

**{¶ 1}** Appellants, Allen Freeman and the Committee to Elect Allen Freeman ("committee"), appeal from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, the Ohio Elections Commission ("commission"). For the reasons that follow, we affirm the judgment of the common pleas court.

**I. Facts & Procedural History**

**{¶ 2}** Freeman was a candidate in the 2020 Republican primary election for the 66th District of the Ohio House of Representatives. At that time, the 66th District encompassed portions of Clermont County and Brown County in southwestern Ohio. After Freeman became a candidate, he met with Anna Lippincott and Megan Fitzmartin from the

political consulting firm JPL & Associates ("JPL"). JPL was "in charge" of the House Republican Campaign Committee and was considered "part" of former Ohio House of Representatives Speaker Larry Householder's "[t]eam." (Oct. 7, 2021 Tr. at 169-70.) The JPL representatives informed Freeman that JPL would "be [his] campaign team." (Nov. 18, 2021 Tr. at 127.) Freeman formed his committee and appointed Susan Jones to serve as his committee's treasurer.

{¶ 3} The 2020 primary election was scheduled for March 17, 2020, but was extended to April 28, 2020 in response to the COVID-19 pandemic. Freeman did not win the primary election.

{¶ 4} In August and September of 2020, Christopher Hicks, a citizen of Clermont County, filed two pro se affidavits of complaint with the commission. The complaints both alleged that Freeman and his committee failed to "file a complete and accurate campaign finance statement" and failed to "keep a strict account of all contributions" in violation of R.C. 3517.13(B) and 3517.10(D)(2). (Aug. Compl. at 1-2, Sept. Compl. at 1-2.) Hicks' August complaint alleged that Luke Householder, the son of former Speaker Larry Householder, performed services for the Freeman campaign and received compensation for his services from JPL. The complaint noted that neither the Freeman committee's pre- nor post-primary financial disclosure statements reflected any contributions from or expenditures to JPL or Luke Householder.

{¶ 5} Hicks' September complaint alleged that Freeman "made extensive use of TV and radio advertising in his run for office," but that neither the committee's pre- nor post-primary financial disclosure statements "showed [any] debts, loans, or in-kind contributions" which would account for the "significant media purchases." (Sept. Compl. at 1-2.) Hicks attached six invoices he found on a Federal Communications Commission ("FCC") database to the September complaint. The invoices demonstrated that Strategic Media Placement ("Strategic") spent $118,094.50 to place television and radio advertisements on behalf of the Freeman campaign between late February and March of 2020.

{¶ 6} The commission held hearings on the complaints on October 7, October 28, and November 18, 2021. The evidence presented at the hearings demonstrated that Freeman participated in the production of the television and radio advertisements,

approved the content of the advertisements, knew the advertisements aired prior to the 2020 primary election, and that Freeman knew media outlets would not broadcast political advertisements unless they received payment upfront. The Freeman campaign's television and radio advertisements contained disclaimers stating that the advertisements were "[p]aid for by the committee to elect Allen Freeman." (Oct. 7, 2021 Tr. at 249, 303; Hearing Ex. 25B.) However, Freeman testified that he did not authorize any amount to be spent on the advertisements and that he did not know who paid for the advertisements.

{¶ 7} Scott Schweitzer, the Chief Operating Officer of Strategic, explained that Constant Content hired Strategic to produce and place the advertisements for the Freeman campaign. JPL and Constant Content were both companies created and operated by Jeff Longstreth. Schweitzer and Jones both noted that there was little distinction between JPL and Constant Content. Freeman claimed that he had never heard of Constant Content and "had no clue * * * how they were related to [his] campaign." (Nov. 18, 2021 Tr. at 141.)

{¶ 8} Between February and March of 2020, Strategic sent Constant Content invoices totaling $137,982.81 for media services performed for the Freeman campaign. Constant Content paid some of the invoices, but not all of them. Schweitzer noted that he worked closely with Longstreth, Fitzmartin, and Lippincott to produce and place the advertisements, but that he saw Freeman only once and did not interact with him beyond that.

{¶ 9} On April 1, 2020, Constant Content sent an email to Freeman and Jones containing a $290,744.63 invoice. An itemized list detailing the services and charges represented in the invoice was attached to the email. When Jones received the invoice, she emailed Lippincott and asked, "is this for real or are you kidding me or something like that? Because [Jones] thought the invoice was quite high." (Oct. 28, 2021 Tr. at 329, 412-13.) Jones never opened the attachment to the email. Lippincott responded to Jones and told her not to worry about the invoice. Freeman stated that he never saw the April 1, 2020 email from Constant Content.

{¶ 10} R.J. Mancini served as the campaign manager for the Freeman campaign. Mancini explained that JPL instructed him to work on the Freeman campaign and that the Ohio Republican Party ("ORP") compensated him for his services. The executive director of the ORP stated that the ORP paid Mancini and then "in-kinded his payroll." (Oct. 7, 2021

Tr. at 161.) Stephen Caraway testified that JPL hired his political consulting firm to work on the Freeman campaign. JPL instructed Caraway to send his invoices to Constant Content, but JPL paid Caraway's invoices. Caraway also testified that he believed Luke Householder volunteered for the Freeman campaign.

{¶ 11} Neither the Freeman committee's pre-primary financial disclosure statement submitted on March 5, 2020, nor the committee's post-primary financial disclosure statement submitted on June 4, 2020, reflected any in-kind contributions or expenditures related to the campaign's television and radio advertisements or the services of JPL, Mancini, Caraway, Strategic, or Constant Content. The committee's financial disclosure statements demonstrated that it made expenditures of $14,000 during the campaign and had $96,000 cash-on-hand when the election ended.

{¶ 12} Freeman testified that JPL was supposed "to be paid upon presentation of an invoice," but that JPL "never presented an invoice to [him]." (Freeman Aff. at ¶ 5-9.) On July 30, 2020, the federal government indicted former Speaker Larry Householder, Jeff Longstreth, and others on racketeering conspiracy charges. Jones believed JPL's and Constant Content's records were seized in July 2020 in connection with the federal indictments.

{¶ 13} On April 15, 2021, the Freeman committee filed a $0 amendment to its financial disclosure statements with the Secretary of State's office. The committee submitted an explanation with the amendment, stating that it never received a final invoice from JPL, that it first learned of the Strategic/Constant Content invoices on April 9, 2021, and that it had no contractual relationship with Constant Content. The committee acknowledged it once received a "highly questionable email from Constant Content asking us to pay them over $290,000," but explained that it was told to "disregard it, which we did." (Hearing Ex. 19.)

{¶ 14} Following a public deliberation on December 7, 2021, the commission adopted its final order and decision in the case on December 16, 2021. The commission reviewed the evidence and determined that the Freeman committee received a "variety of in-kind contributions," that included the "production and airing of television and radio advertisements" and "personal assistance to the campaign committee including a campaign manager and multiple campaign and media consultants." (Commission Decision at 5.) The

commission observed that the "Freeman campaign committee did not reflect any in-kind contribution for these various activities" on the committee's financial disclosure statements. (Commission Decision at 4.) As such, the commission found the evidence established violations of R.C. 3517.10 and 3517.13. The commission imposed a joint and severable fine of $50,000 against Freeman and his committee.

{¶ 15} Appellants filed a timely R.C. 119.12 appeal of the commission's order to the common pleas court. On July 21, 2022, appellants filed a brief in the common pleas court asserting that the commission's order was not based on reliable, probative, or substantial evidence and was not in accordance with law. The commission filed a brief responding to appellants' arguments on September 1, 2022. On December 9, 2022, the common pleas court issued a decision and entry affirming the commission's order.

## II. Assignments of Error

{¶ 16} Appellants appeal, assigning the following errors for our review:

1. The trial court erred in affirming the Commission's abuse of discretion in summarily excluding the testimony of Donald Brey without undertaking the appropriate analysis.

2. The trial court erred in affirming the Commission's misapplication of statutes that do not apply to candidates and compounded the error by affirming statutory violation based on statutes and conduct not alleged in the complaint, thus depriving Mr. Freeman of due process.

3. The trial court erred in affirming the Commission's erroneous finding of vicarious liability on the part of Mr. Freeman when the treasurer was not named.

4. The trial court erred in affirming the Commission's imposition of fines in excess of its statutory authority upon entities that no longer exist.

## III. Standard of Review

{¶ 17} In an administrative appeal pursuant to R.C. 119.12, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). *See Our Place, Inc. v. Ohio*

*Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992) (defining reliable, probative, and substantial evidence). The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " (Emphasis sic.) *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court "must give due deference to the administrative resolution of evidentiary conflicts," although "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), citing R.C. 119.12.

{¶ 18} An appellate court's review of an administrative decision is more limited than that of the common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). *See Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). Absent an abuse of discretion, this court may not substitute its judgment for that of the administrative agency or the common pleas court. *Pons* at 621. However, on the question of whether the commission's order was in accordance with the law, this court's review is plenary. *Kistler v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 9, citing *Univ. Hosp. v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

## IV. First Assignment of Error—Attorney's Testimony

{¶ 19} Appellants' first assignment of error asserts the common pleas court erred by affirming the commission's decision to exclude the testimony of appellants' attorney, Donald Brey. The common pleas court noted that, although Attorney Brey initially proposed to testify, he then submitted a written proffer and "chose to rest his case without a determination by the Commission on whether he could testify." (Dec. 9, 2022 Decision & Jgmt. Entry at 4.) As such, the court concluded that the commission "did not make a final determination that counsel could not testify." (Decision & Jgmt. Entry at 4.)

{¶ 20} Appellants contend the commission erred by "summarily exclud[ing] the testimony of Don Brey without appropriate analysis" and by "fail[ing] to make a final determination" regarding whether Attorney Brey could testify. (Appellants' Brief at 16.) When an attorney seeks to testify in a proceeding where they represent a litigant, the parties or the court may make a motion requesting that the attorney "withdraw voluntarily or be disqualified by the court from further representation in the case." *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256 (1987), paragraph two of the syllabus. The court "must then consider whether any of the exceptions to [Prof.Cond.R. 3.7] are applicable and, thus, whether the attorney may testify and continue to provide representation." *Id*. Prof.Cond.R. 3.7(a) provides that a lawyer "shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; (3) the disqualification of the lawyer would work *substantial* hardship on the client." (Emphasis sic.) *See also Damron v. CSX Transp., Inc.*, 184 Ohio App.3d 183, 2009-Ohio-3638, ¶ 39 (2d Dist.), citing *Mentor Lagoons, Inc.* (explaining that a court's analysis under Prof.Cond.R. 3.7(a) and *Mentor Lagoons, Inc.* "functions to allow the court to exercise its inherent power of disqualification to prevent a potential violation of [the ethics rules]"); *State v. Oteng*, 10th Dist. No. 19AP-763, 2020-Ohio-6939, ¶ 19.

{¶ 21} During the presentation of appellants' case, Attorney Brey informed the commission he intended to testify. The commissioners told Attorney Brey he would "have a conflict of representing yourself," and that testifying would "disqualify [him] as counsel in the case." (Nov. 18, 2021 Tr. at 81, 90.) Attorney Brey responded stating that he could testify and continue as counsel because his testimony was "not going to be contradicted" and because he was "in a unique position to represent the client in this case." (Nov. 18, 2021 Tr. at 83.) The commissioner's informed Attorney Brey they would need to continue the hearing to research the issue of counsel testifying. (Nov. 18, 2021 Tr. at 98-102.) In response, Attorney Brey asked if he could make a proffer of his testimony, noting that he "want[ed] to get this thing done." (Nov. 18, 2021 Tr. at 99, 103.) Attorney Brey then consulted with his client and informed the commission appellants would "go forward with

the rest of the witnesses and defer the decision on the necessity of [his] testimony until after that." (Nov. 18, 2021 Tr. at 108.)

{¶ 22} Appellants presented testimony from Philip Richter, the executive director of the commission, and Freeman. Attorney Brey then submitted a written proffer of his testimony and rested his case.

{¶ 23} Appellants contend the commission effectively denied Attorney Brey's request to testify because it failed to expressly rule on the request. (Appellants' Brief at 21.) *See Huntington Natl. Bank v. Bywood, Inc.*, 10th Dist. No. 12AP-994, 2013-Ohio-2780, ¶ 5 (stating that "[g]enerally, when a trial court enters judgment without expressly ruling on a pending motion, it is presumed that the court overruled the motion"); *Wells Fargo Bank, N.A. v. Rahman*, 10th Dist. No. 13AP-376, 2013-Ohio-5037, ¶ 18. We disagree. The record demonstrates that Attorney Brey rested his case without requesting a determination from the commission regarding whether he could testify.[1] Appellants effectively waived any claim of error by failing to renew their request for Attorney Brey to testify before the close of the evidence. *Compare Odita v. Phillips*, 10th Dist. No. 09AP-1172, 2010-Ohio-4321, ¶ 56 (holding that, even if a party objects to exhibits during the trial, the "fail[ure] to renew an objection at the time exhibits are admitted into evidence, * * * waives the ability to raise the admission as error on appeal, unless plain error is shown"); *Chemical Bank of New York v. Neman*, 52 Ohio St.3d 204, 207 (1990) (holding that a party "waive[s] any claim of error in the denial of the directed verdict by failing to renew his motion at the close of all evidence"); *Sanders v. Fridd*, 10th Dist. No. 12AP-688, 2013-Ohio-4338, ¶ 45, quoting S*tate v. Smith*,

---

[1] The record also fails to demonstrate that Attorney Brey would have satisfied any of the exceptions stated in Prof.Cond.R. 3.7(a). *See McCormick v. Maiden*, 6th Dist. No. E-12-072, 2014-Ohio-1896, ¶ 11 (stating that the "burden of proving one of the exceptions to Prof.Cond.R. 3.7 applies is upon the attorney seeking to claim the exception"). Attorney Brey's proffer stated that he asked Richter "how to report Allen Freeman campaign debt when we were unable to obtain any information from JPL," but Richter testified that Attorney Brey "didn't indicate to [him] who the client was" as it was a "much more generalized conversation." (Brey Proffer at 1; Nov. 18, 2021 Tr. at 110, 121-22.) Thus, the record demonstrates that aspects of Attorney Brey's testimony were contested. Attorney Brey's testimony did not concern the nature or value of his legal services. Attorney Brey also did not present any evidence which would support a finding of substantial hardship under Prof.Cond.R. 3.7(a)(3). Attorney Brey informed the commission only that his disqualification "probably would" work a substantial hardship on appellants. (Nov. 18, 2021 Tr. at 92.) *See 155 N. High Limited v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 429 (1995) (stating that a "substantial hardship" under Prof.Cond.R. 3.7 requires more than proof "of mere financial hardship or long-time familiarity with the case," as it requires "some proof of specialized expertise").

7th Dist. No. 11 MA 120, 2013-Ohio-756, ¶ 128 (noting that a motion in limine " 'must be renewed at trial or the argument made therein [are] waived for purposes of appeal' ").

{¶ 24} As noted, in the administrative appeal context an appellate court is to determine only whether the common pleas court abused its discretion. *Pons* at 621. Because appellants failed to renew their request for Attorney Brey to testify, the common pleas court did not abuse its discretion by rejecting appellants' contention that the commission refused to allow Attorney Brey to testify. Accordingly, we overrule appellants' first assignment of error.

## V. Second Assignment of Error−Due Process

{¶ 25} Appellants' second assignment of error asserts the common pleas court erred by finding that the commission did not violate Freeman's right to due process. Appellants contend that the commission found Freeman in violation of statutes which do not apply to candidates, and that the commission found appellants violated statutes and engaged in conduct not identified in the complaints. The common pleas court reviewed the record and concluded that appellants "had a reasonable opportunity to know the claims against them and a reasonable opportunity to meet those claims at the hearing before the Commission." (Decision & Jgmt. Entry at 6.) The court also determined that, pursuant to R.C. 3517.992(A), the commission properly imposed a fine against Freeman for his committee's violation of R.C. 3517.13.

{¶ 26} The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution require that administrative proceedings comport with due process. *Richmond v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-328, 2013-Ohio-110, ¶ 10, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976). Due process contains two components: procedural due process and substantive due process. *State v. Pennington*, 10th Dist. No. 01AP-657, 2002 Ohio App. LEXIS 251 (Jan. 29, 2002). " 'Procedural due' process ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision." *Kistler v. Conrad*, 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 14, quoting *State v. Ward*, 130 Ohio App.3d 551, 557 (8th Dist.1999). "The essence of substantive due process is the protection from certain arbitrary, wrongful governmental actions irrespective of the fairness of the procedures used to implement them." *Id.*, citing *Southern Health Facilities, Inc. v. Somani*, 10th Dist. No. 95APE06-826,

1995 Ohio App. LEXIS 5866 (Dec. 29, 1995). Whether due process requirements have been satisfied presents a legal question we review de novo. *Flynn v. State Med. Bd of Ohio*, 10th Dist. No. 16AP-29, 2016-Ohio-5903 at ¶ 46.

{¶ 27} " 'Although due process is flexible and calls for such procedural protections as the particular situation demands, the basic requirements of procedural due process are notice and an opportunity to be heard.' " *Edmands v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-778, 2015-Ohio-2658, ¶ 23, quoting *Fairfield Cty. Bd. of Commrs. v. Nally*, 143 Ohio St.3d 93, 2015-Ohio-991, ¶ 42. The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Althof v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-1169, 2007-Ohio-1010, ¶ 19, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). *Accord Korn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988), citing *Luff v. State*, 117 Ohio St. 102 (1927). R.C. 119.07 requires that an agency provide a party with notice that "include[s] the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days." *See Kellough v. Ohio State Bd. of Edn.*, 10th Dist. No. 10AP-419, 2011-Ohio-431, ¶ 36 (noting that R.C. 119.07 satisfies the requirements of procedural due process). Additionally, "[a]n appellant alleging the requirements of due process were not satisfied in an administrative proceeding must also demonstrate that the violation of due process resulted in prejudice." *Eckley v. Ohio State Racing Comm.*, 10th Dist. No. 22AP-548, 2023-Ohio-2401, ¶ 32, citing *Floyd's Legacy, LLC v. Ohio Liquor Control Comm.,* 10th Dist. No. 19AP-704, 2020-Ohio-4074, ¶ 17.

{¶ 28} Appellants initially contend the commission erred by finding that Freeman violated R.C. 3517.10 and 3517.13, because these statutes do not "impose any obligations on a *candidate*." (Emphasis sic.) (Appellants' Brief at 23.) R.C. 3517.10(A) provides that every "campaign committee * * * that made or received a contribution or made an expenditure in connection with the nomination or election of any candidate * * * shall file * * * a full, true, and itemized statement * * * setting forth in detail the contributions and expenditures." R.C. 3517.10(A)(1) states that a campaign committee must file a statement disclosing contributions and expenditures 12 days before the election, and R.C. 3517.10(A)(2) states

that a campaign committee must file another statement disclosing contributions and expenditures 38 days after the election. R.C. 3517.13 corresponds to the requirements stated in R.C. 3517.10. R.C. 3517.13(B) provides that no "campaign committee shall fail to file a complete and accurate statement required under" R.C. 3517.10(A)(1), i.e., the pre-election report. R.C. 3517.13(C) provides that no "campaign committee shall fail to file a complete and accurate statement required under" R.C. 3517.10(A)(2), i.e., the post-election report.

{¶ 29} Although R.C. 3517.10 and 3517.13 identify the "campaign committee" as the responsible party, the commission stated that "Allen Freeman and the Committee to Elect Allen Freeman, committed a violation of Ohio Revised Code § 3517.10 and R.C. § 3517.13, for filing an incomplete campaign finance report as alleged in the complaint." (Decision at 1.) However, the commission expressly relied on R.C. 3517.992 to impose the fine against both Freeman and his committee. R.C. 3517.992(A)(1) provides that a "candidate whose campaign committee violates division (A), (B), (C), (D), or (V) of section 3517.13 of the Revised Code, or a treasurer of a campaign committee who violates any of those divisions, shall be fined not more than one hundred dollars for each day of violation." Thus, pursuant to R.C. 3517.992(A)(1), the commission properly imposed a fine against Freeman for his committee's violation of R.C. 3517.13. As such, to the extent the commission erred by stating that both Freeman and his committee committed a violation of R.C. 3517.10 and 3517.13, the error was harmless. *See* Civ.R. 61 (stating that a court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"); *Wallick Properties Midwest, LLC v. Jama*, 10th Dist. No. 20AP-299, 2021-Ohio-2830, ¶ 20; *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-65 (1980).

{¶ 30} Appellants next assert that the commission found violations of Revised Code sections which were not alleged in the complaints. Appellants claim that the complaints asserted violations of only R.C. 3517.10(D)(2) and 3517.13(B), while the commission "found Allen Freeman in violation of R.C. 3517.10(A) and 3517.13(A), (B), and (C)." (Appellants' Brief at 24.) Appellants assert that Freeman "was never on notice" he needed to defend against charges involving R.C. 3517.10(A), R.C. 3517.13(A), or R.C. 3517.13(C). (Appellants' Brief at 24.)

{¶ 31} The commission found the evidence sufficient to establish a violation of R.C. 3517.10 and 3517.13, but the commission did not identify which subsections of R.C. 3517.10 and 3517.13 appellants violated. The commission did state that it could not find a violation of R.C. 3517.10(D)(2), because the treasurer was not a party to the case. *See* R.C. 3517.10(D)(2) (obligating only the committee's treasurer to "keep a strict account of all contributions, from whom received and the purpose for which they were disbursed").

{¶ 32} R.C. 3517.13(A) pertains only to statewide candidates. Freeman was not a statewide candidate. *See* R.C. 3517.13(A)(2); 3517.10(F)(2) (defining a "statewide candidate" as the candidates for the "offices of governor and lieutenant governor or a candidate for the office of secretary of state, auditor of state, treasurer or state, attorney general, member of the state board of education, chief justice of the supreme court, or justice of the supreme court"). Appellants' contention that the commission found a violation of R.C. 3517.13(A) lacks merit.

{¶ 33} The commission's decision demonstrates that it found appellants failed to file the pre- and post-primary financial disclosure statements required by R.C. 3517.10(A)(1) and (2), and 3517.13(B) and (C). Hicks' August complaint alleged that appellants failed to account for expenses or contributions related to Luke Householder on either the committee's pre- or post-primary financial disclosure statements. Hicks' September complaint alleged that appellants failed to account for expenses or contributions related to the campaign's television and radio advertisements on either the committee's pre- or post-primary financial disclosure statements.

{¶ 34} Thus, although each complaint expressly alleged that Freeman and/or his committee violated R.C. 3517.13(B) and 3517.10(D)(2), the substance of each complaint asserted that appellants failed to file complete and accurate pre- and post-primary financial disclosure statements. As such, the complaints provided appellants with sufficient notice that they needed to defend against charges involving R.C. 3517.10(A)(1) and (2), and 3517.13(B) and (C) at the hearings.

{¶ 35} Appellants lastly assert that the commission found appellants violated R.C. 3517.10 and 3517.13 based on conduct not alleged in the complaints. The commission found that, in addition to the committee's failure to report in-kind contributions related to the television and radio advertisements, the Freeman committee failed to report in-kind

contributions from its "campaign manager and multiple campaign and media consultants that likely included at least JPL & Associates, Constant Content, Strategic Media Placement and Stephen Caraway." (Commission Decision at 5.) Appellants contend that because the complaints did not allege a failure to report the services of the campaign's manager and consultants, they were unable to defend against these allegations at the hearing. Appellants also note that the commission "focused on [the] $290,000 invoice" from Constant Content but the complaints did not mention the $290,000 invoice. (Appellants' Brief at 27.)

{¶ 36} At a September 23, 2021 hearing, appellants moved to limit the evidentiary hearings to facts concerning "Luke Householder" and "the six invoices" from the FCC database. (Sept. 23, 2021 Tr. at 29-30.) Hicks responded to the motion arguing that his September complaint concerned a general failure to report "media spending," and was not limited to the six FCC invoices. (Sept. 23, 2021 Tr. at 44.) Hicks noted that he first learned of the Strategic/Constant Content invoices and the $290,744.63 Constant Content invoice after he submitted his complaints, and further noted that appellants "had [his] exhibits" and knew "exactly what [he was] going to talk about, what exactly [he was] going to focus on" at the hearings. (Sept. 23, 2021 Tr. at 33-34, 51-52.)

{¶ 37} The commission denied appellants' motion to limit the evidentiary hearings. Accordingly, appellants knew the evidentiary hearings would not be limited to evidence concerning Luke Householder and the six FCC invoices. *Compare Pruneau v. State*, 191 Ohio App.3d 588, 2010-Ohio-6043, ¶ 36-37, 40 (10th Dist.) (holding that, because the notice letter alleged only a "very specific violation of R.C. 4115.13(H)(1) and failed to refer to R.C. 4115.13(H)(4)," and because the parties "stipulated" before the hearing that the only charge at issue was the R.C. 4115.13(H)(1) charge, the notice was "insufficient to alert [appellant] that charges under R.C. 4115.13(H)(4) were at issue").

{¶ 38} The record demonstrates that appellants presented or solicited evidence at the hearings regarding the $290,000 invoice and the unreported services of the campaign's manager and consultants. In response to appellants' questions on cross-examination, Jones explained that she did not believe it was appropriate to report the $290,744.63 Constant Content invoice on the committee's financial disclosure statement after Lippincott told her to disregard it. Appellants also addressed the $290,000 invoice in their April 15, 2021 filing with the Secretary of State's office.

**{¶ 39}** Appellants defended against the contention that they failed to report the services of their campaign manager and consultants by arguing that they did not receive information necessary to report these services as in-kind contributions. Appellants asked Jones to explain what information a committee needed to report an in-kind contribution. Appellants asked Caraway whether he had seen "any documents giving information about an in-kind contribution that were directed to either Allen Freeman or to Susan Jones from anyone," and Caraway responded that he had not. (Oct. 28, 2021 Tr. at 267.) Freeman testified that he did not report Mancini's services because he did not receive "any paperwork" directing him to report Mancini as an in-kind contribution. (Nov. 18, 2021 Tr. at 168.) Freeman stated that he did not report Caraway's services as an in-kind contribution because it was Caraway's "responsibility and JPL's responsibility to provide that paperwork," but they did not provide him with the paperwork. (Nov. 18, 2021 Tr. at 248-49.) Freeman testified that he contacted Lippincott after the campaign to attempt to obtain a final invoice from JPL, but that he never heard back from Lippincott.

**{¶ 40}** The commission found the statements in the testimony "disingenuous" as they "relate[d] to a candidate's responsibility to properly investigate amounts owed by the campaign committee when there is sufficient evidence that numerous, substantial expenditures remain outstanding." (Commission Decision at 6.) Thus, the commission did not find appellants' explanations for why they did not report the services of their campaign personnel to be meritorious.

**{¶ 41}** Reviewing the record, it is apparent that appellants knew the charges against them and had a reasonable opportunity to meet those charges at the hearing before the commission. *Althof*, 2007-Ohio-1010 at ¶ 20; *Cowans v. Ohio State Racing Comm.*, 10th Dist. No. 13AP-828, 2014-Ohio-1811, ¶ 36; *Johnson v. State Med. Bd. of Ohio*, 10th Dist. No. 98AP-1324, 1999 Ohio App. LEXIS 4487 (Sept. 28, 1999). Moreover, appellants do not identify any additional evidence they would have presented or arguments they would have made had Hicks' pro se complaints contained additional information. As such, appellants fail to demonstrate any prejudice resulting from the due process violation they allege. *See Griffin v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-174, 2011-Ohio-6089, ¶ 26; *Wilson v. State Chiropractic Bd.*, 10th Dist. No. 18AP-739, 2019-Ohio-3243, ¶ 30.

**{¶ 42}** Based on the foregoing, appellants' second assignment of error is overruled.

## VI.  Third Assignment of Error–Naming the Treasurer

{¶ 43}  Appellants' third assignment of error asserts that the common pleas court erred in affirming the commission's decision to impose vicarious liability on Freeman, because Hicks did not make the treasurer a party to the case. Appellants contend that the commission lacked "authority to impose vicarious liability [solely] upon the candidate" because Hicks did not satisfy "the legal duty under Ohio Adm.Code § 3517-1-02(A)(1)(b) to name *both* the candidate and the treasurer as parties to the case." (Emphasis sic.) (Appellants' Brief at 32.)

{¶ 44}  The commission is required to "prescribe the form for complaints" filed with it. R.C. 3517.153(B). R.C. 3517.152(G)(3) provides that the commission "shall adopt rules for its procedures in accordance with [R.C.] Chapter 119." Pursuant to this statutory mandate, the commission promulgated Ohio Adm.Code 3517-1-02, providing that a complaint may be submitted to the commission either "[b]y affidavit by an individual based on personal knowledge" or "by the secretary of state or an official of a county board of elections." Ohio Adm.Code 3517-1-02(A)(1) and (2). Under either scenario, "[i]f any party is a campaign committee, the candidate, and campaign treasurer in those circumstances involving sections 3517.08 to 3517.13 of the Revised Code, shall be made a party to the case." Ohio Adm.Code 3517-1-02(A)(1)(b) and (2)(d).

{¶ 45}  During a September 9, 2021 pre-trial hearing, appellants' counsel noted that the "Complaint [was] pretty clear, [that Jones was] not" a party to the case.  (Sept. 9, 2021 Tr. at 24.)  At the start of the October 7, 2021 evidentiary hearing, appellants' counsel noted that "Susan Jones [was] a witness. She's not a party * * *.  The two parties are the campaign committee and Mr. Freeman."  (Oct. 7, 2021 Tr. at 8.)  Thus, appellants acknowledged that Jones was not a party early in the administrative proceedings.

{¶ 46}  After Hicks rested his case before the commission, appellants moved to dismiss Hicks' R.C. 3517.10(D)(2) claim because the "[t]reasurer [was] not even a party." (Nov. 18, 2021 Tr. at 9.)  Following the evidentiary hearings, appellants filed a motion arguing that Hicks' failure to make the treasurer a party pursuant to Ohio Adm.Code 3517-1-02(A)(1)(b) "require[d] the Commission to dismiss Complainant's R.C. § 3517.10(D)(2) allegation."  (Notice of Termination at 5.)

{¶ 47} Thus, during the administrative proceedings appellants argued that the commission should dismiss Hicks' R.C. 3517.10(D)(2) claim because Hicks failed to make the treasurer a party. Appellants never presented the commission with the argument they now raise, i.e., that the commission lacked authority to impose vicarious liability on Freeman because Hicks failed to make the treasurer a party to the case. Although appellants raised their current argument in the common pleas court, the common pleas court did not address it.

{¶ 48} Generally, when the common pleas court fails to address an argument, this court will remand the matter for the common pleas court to make the determination in the first instance. *See State ex rel. Ewart v. State Teacher Retirement Sys. Bd. of Ohio*, 10th Dist. No. 18AP-826, 2019-Ohio-2459, ¶ 53 (noting that "[a]lthough STRB raised this argument in its brief to the trial court, the trial court did not address [the argument]," and therefore this court remanded the "matter to the trial court to make this determination in the first instance"); *Glassco v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 03AP-871, 2004-Ohio-2168, ¶ 29. However, we need not remand the matter to the common pleas court, because appellants waived their argument by failing to raise it during the administrative proceedings.

{¶ 49} When a party fails to raise an issue they could have raised at the administrative level, the party has waived the issue. *See Golden Christian Academy. v. Zelman*, 144 Ohio App.3d 513, 516-17 (10th Dist.2001) (stating that "[i]ssues not raised at the administrative level are waived"); *BRT Transp., LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 29 (holding that because the argument "was not raised at the administrative level," this court "decline[d] to further address th[e] issue"); *Jain v. Ohio State Med. Bd.*, 10th Dist. No. 09AP-1180, 2010-Ohio-2855, ¶ 10 (explaining that "[a]llowing a claimant to raise an issue for the first time in an appeal to the court of common pleas would frustrate the statutory system for having issues raised and decided through the administrative process"); *Sammor v. Ohio Liquor Control Comm.*, 10th Dist. No. 09AP-20, 2009-Ohio-3439, ¶ 25; *Trish's Café & Catering, Inc. v. Ohio Dept. of Health*, 195 Ohio App.3d 612, 2011-Ohio-3304, ¶ 19 (10th Dist.); *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997). *See also Edmands*, 2015-Ohio-2658,

¶ 19 (explaining that the waiver doctrine does not apply where the "appeal to the common pleas court presents the first opportunity for the party to raise [the] argument").

{¶ 50} Appellants could have, but did not, raise their vicarious liability argument during the administrative proceedings. As such, appellants have waived the issue. We therefore overrule appellants' third assignment of error.

## VII. Fourth Assignment of Error—Fine

{¶ 51} Appellants' fourth assignment of error asserts the common pleas court erred by affirming the commission's imposition of a $50,000 fine against Freeman and his committee. Appellants contend that the commission could not impose the fine against the committee and that the amount of the fine exceeded the commission's statutory authority.

{¶ 52} Following the conclusion of the evidentiary hearings and the commission's public deliberation on the case, appellants filed a Notice of Termination and Motion to Dismiss on December 15, 2021. Appellants informed the commission that the Freeman committee had terminated effective December 13, 2021, and argued that the commission did not have jurisdiction to address Hicks' R.C. 3517.13(B) claim as a result. *See* R.C. 3517.10(A) (providing that if a campaign committee "has no balance on hand and no outstanding obligations" it may "terminate itself"). Because the Notice of Termination and Motion to Dismiss were not on the commission's agenda for its December 16, 2021 meeting, the commission refused to address them.

{¶ 53} Appellants continue to assert that the commission "lacked jurisdiction over Hicks' R.C. 3517.13(B) allegation" after the committee's December 13, 2021 termination. (Appellants' Brief at 37.) Appellants contend that the committee's termination was akin to a criminal defendant's death, which requires the dismissal of unresolved criminal proceedings. (Appellants' Brief at 35-36, citing *State v. Blake*, 53 Ohio App.2d 101, 107 (8th Dist.1977). We disagree.

{¶ 54} A campaign committee is an entity authorized by a candidate to receive contributions and make expenditures. *See* R.C. 3517.01(C)(1) (defining a "campaign committee" as "a candidate or a combination of two or more persons authorized by a candidate under section 3517.081 of the Revised Code to receive contributions and make expenditures"). As such, a campaign committee is more akin to a business organization, such as a corporation, rather than a natural life. "[T]he dissolution of a corporation does

not abate '[a]ny claim existing or action or proceeding pending by or against the corporation or which would have accrued against it * * *.' " *State ex rel. Falke v. Montgomery Cty. Residential Dev., Inc.*, 40 Ohio St.3d 71, 74 (1988), quoting R.C. 1701.88(B). *See also Bendure v. Xpert Auto, Inc.*, 10th Dist. No. 11AP-144, 2011-Ohio-6058, ¶ 17; *Crosby v. Beam*, 6th Dist. No. L-87-198, 1988 Ohio App. LEXIS 2712, * 9 (July 8, 1988) (noting that, pursuant to R.C. 1701.88, "any claim which exists [against the corporation] prior to dissolution may be prosecuted to judgment"); R.C. 1701.88(C). Notably, regardless of whether a campaign committee has terminated, the committee's financial disclosure statements must be "carefully preserved" and remain "open to public inspection" for "a period of at least six years after the years in which they are filed." R.C. 3517.10(D)(5). *Accord* R.C. 3517.101(I); R.C. 3517.106(B) through (D).

{¶ 55} The Freeman committee was in existence when it failed to file complete and accurate financial disclosure statements, when Hicks filed his complaints, and throughout the commission's evidentiary hearings on the complaints. The committee's termination three days before the commission issued its final order did not affect the commission's ability to render judgment against the committee.

{¶ 56} Appellants further contend that the commission's fine was contrary to law because any violation of R.C. 3517.13 occurred for less than 500 days. An appellate court "has no authority to modify a penalty lawfully imposed by [an agency]." *Goldfinger Ents., Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 01AP-1172, 2002-Ohio-2770, ¶ 13. *Accord Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraph three of the syllabus; *Blomquist v. Ohio Election Comm.*, 10th Dist. No. 08AP-485, 2008-Ohio-5438, ¶ 24; *King v. State Med. Bd.*, 10th Dist. No. 98AP-570, 1999 Ohio App. LEXIS 201 *4-5 (Jan. 28, 1999) (stating that the common pleas court is "precluded from interfering with or modifying the penalty imposed [by the agency] if such penalty is authorized by law").

{¶ 57} As noted, R.C. 3517.992(A)(1) authorized the commission to impose a fine of $100 per day against Freeman for his committee's violation of R.C. 3517.13. *See also* Ohio Adm.Code 3517-1-14(B)(1)(a) (stating that the commission may impose a fine between $15-$100 per day for filing incomplete or inaccurate campaign finance reports under R.C. 3517.13(A), (B), (C), (D), or (E)). Thus, if the Freeman committee failed to file a complete

and accurate financial disclosure statement for a period of 500 days or more, the commission's $50,000 fine was appropriate. Appellants contend that any violation of R.C. 3517.13 in the present case could only have occurred between October 22, 2020 and April 15, 2021, a period of only 175 days.

{¶ 58} Pursuant to R.C. 3517.13(B), the committee's pre-primary financial disclosure statement had to be submitted by March 5, 2020 and reflect contributions through February 26, 2020. Appellants claim that, because Hicks' complaint alleged only a violation of R.C. 3517.13(B) and because the six FCC invoices attached to the September complaint were "all dated in March 2020," appellants had no duty to report the six FCC invoices on their March 5, 2020 pre-primary statement. (Appellants' Brief at 39.) Therefore, appellants allege that any violation of R.C. 3517.13(B) had to concern the pre-general election financial disclosure statement due on October 22, 2020.

{¶ 59} However, as we explained in our analysis of appellants' second assignment of error, Hicks' complaints alleged a failure to file complete and accurate pre- and post-primary statements, and the evidentiary hearings were not limited to evidence concerning the six FCC invoices. The record demonstrates that Strategic sent Constant Content invoices on February 21, 2020 and February 24, 2020 for radio production and airtime for the Freeman campaign. Constant Content paid the February 24, 2020 invoice on February 24, 2020. Constant Content's payment of the February 24, 2020 invoice was a contribution to the Freeman campaign which should have been reflected on the committee's March 5, 2020 pre-primary financial statement. Appellants' contention that any violation of R.C. 3517.13(B) could not begin until October 22, 2020 lacks merit.

{¶ 60} Appellants claim that any violation of R.C. 3517.13 ended on April 15, 2021, when they filed their $0 amendment and explanation with the Secretary of State's office. The commission found that appellants' April 15, 2021 filing "was not a sufficient explanation of the status of the campaign committee at the time that the Addendum was submitted." (Commission Decision at 5.) The April 15, 2021 filing did not amend the committee's financial disclosure statements to reflect any of the in-kind contributions identified by the commission in its December 16, 2021 decision. Accordingly, the April 15, 2021 filing did not constitute the end date of the Freeman committee's violation of R.C. 3517.13.

{¶ 61} The record in the present case demonstrates that the Freeman committee failed to file complete and accurate financial disclosure statements on March 5, 2020 and June 4, 2020, and that the committee's failure to file complete and accurate financial disclosure statements continued until the commission's public deliberation on December 7, 2021. The period between March 5, 2020 and December 7, 2021 was 642 days, and the period between June 4, 2020 and December 7, 2021 was 551 days. As such, the commission's $50,000 fine was authorized by law.

{¶ 62} Based on the foregoing, appellants' fourth assignment of error is overruled.

**VIII. Conclusion**

{¶ 63} Having overruled appellants' first, second, third, and fourth assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and EDELSTEIN, JJ., concur.